554 So.2d 676 (1989)
STATE of Louisiana
v.
Norvell SMITH.
No. 87-KA-0649.
Supreme Court of Louisiana.
October 23, 1989.
*677 William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., Jack Peebles, Brian Treay, Asst. Dist. Attys., for plaintiff-appellee.
Clyde Merritt, Dwight Doskey, Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
DENNIS, Justice.
Appellant was convicted of first degree murder and sentenced to death by electrocution. There are five assignments of error and a request that this court review the entire record and all of the evidence for *678 error as reflected by the various transcripts.

1. Scope of Review
Where the death penalty is applicable, this court will notice all possible errors even though not properly raised. Failure to recognize this duty on our part would be inconsistent with the mandate of our constitution that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." La. Const. Art. I, § 22. In a case involving capital punishment anything less than this court's careful consideration of the entire record for possible prejudicial error would not afford "an adequate remedy by due process of law and justice." Id. Further, this court's refusal to consider such an error, simply because appellant's lawyer did not properly raise it, as more able counsel might have, would either defer the problem, adding to the burgeoning delays of postconviction proceedings in state and federal courts, or create the risk of allowing appellant to be executed without a judicial determination of whether the error had prejudicially affected the procedural fairness or accuracy of factfinding in his case. Consequently, we may decline to perform this task on direct review in a capital case only at the cost of shirking our constitutional duty to afford an adequate remedy "administered without denial, partiality, or unreasonable delay." Id. Moreover, this court's failure to comply with its duty would thwart the aim of speed and efficiency implicit in our state constitution's grant of exclusive appellate jurisdiction of death penalty cases to this court, La. Const. Art. V, § 5(D), and ignore our own rule calling for an expeditious direct review of each capital sentence to determine whether it was imposed under the influence of prejudice, arbitrariness or passion, La. Supreme Court Rule 28. This rule was adopted pursuant to an explicit legislative request and has served to guide our review of death penalties for over a decade with legislative approval. La.C. Cr.P. art. 905.9. See cases holding that in a capital appeal, this court will review all assignments of error, whether briefed or not, as a matter of policy: State v. Bay, 529 So.2d 845, 852 (La.1988) ("The potential deprivation of life warrants that we make the extra effort to review the record and see if we can develop a viable argument for the defendant even if the defendant fails to do so himself. Special consideration should be afforded before a life is taken."); State v. Ward, 483 So.2d 578, 587 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 168 (1986); State v. Lowenfield, 495 So.2d 1245, 1248 n. 1 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); State v. Wilson, 467 So.2d 503, 507 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Celestine, 443 So.2d 1091, 1094 (La.1983), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984); State v. Narcisse, 426 So.2d 118, 131 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Lindsey, 404 So.2d 466, 478 (La.1981), cert. denied, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983); State v. Monroe, 397 So.2d 1258, 1272 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983); State v. Berry, 391 So.2d 406, 411 (La.1980) (original hearing), cert. denied, 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981); see also cases holding that, in a capital case, this court will consider issues not objected to at the trial or sentencing hearing, but assigned as error, due to our obligation to examine the record for passion, prejudice, or arbitrary factors which may have been injected into the proceedings: State v. Clark, 492 So.2d 862, 865 (La. 1986); State v. Hamilton, 478 So.2d 123, 127 n. 7 (La.1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); State v. Glass, 455 So.2d 659, 667 (La. 1984), cert. denied, 471 U.S. 1080, 105 S.Ct. 2159, 85 L.Ed.2d 514 (1985); State v. Copeland, 419 So.2d 899, 910 (La.1982).
For cases in accord with the view that when the death penalty has been imposed the appellate court should independently and with a greater degree of scrutiny review the entire record for prejudicial error, *679 see United States v. Cramer, 137 F.2d 888, 895 (2d Cir.1943), rev'd. on other grounds, 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441 (1945); Stephan v. United States, 133 F.2d 87, 89-90 (6th Cir.1943), cert. denied, 318 U.S. 781, 63 S.Ct. 858, 87 L.Ed. 1148 (1943); Williams v. King, 573 F.Supp. 525, 530 (M.D.La.1983), affirmed, 719 F.2d 730 (5th Cir.1983), cert. denied, 464 U.S. 1027, 104 S.Ct. 562, 78 L.Ed.2d 732 (1983); Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968), vacated on other grounds, 408 U.S. 934, 92 S.Ct. 2851, 33 L.Ed.2d 747 (1972); State v. Hickock, 188 Kan. 473, 363 P.2d 541 (1961); Russell v. State, 226 Miss. 885, 85 So.2d 585 (1956); State v. McLean, 282 N.C. 147, 191 S.E.2d 598 (1972), cert. denied, 410 U.S. 968, 93 S.Ct. 1453, 35 L.Ed.2d 704 (1973); State v. Swilling, 249 S.C. 541, 155 S.E.2d 607 (1967), cert. denied, 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968).

2. Background Facts
Norvell Smith and Donald Harris were charged jointly by indictment with the first degree murder of sixteen year old Kenny Jackson during an attempted armed robbery on November 2, 1985 in Orleans Parish. The state elected to try the defendants separately and to proceed with its case against Norvell Smith first. Smith pleaded not guilty to the charge, was subsequently convicted by the unanimous verdict of a twelve-person jury, and was condemned to death by electrocution pursuant to the same jury's recommendation following a sentencing hearing.
The theory of the prosecution was that Smith conceived of a plan to rob Kenny Jackson and enlisted Harris as an accomplice; the two, with their faces covered by Halloween masks supplied by Smith, accosted Jackson as he crossed a vacant lot near his residence; Smith brandished a .38 caliber pistol and demanded Jackson's money; and when Jackson failed to deliver, protesting that he had none, Smith beat and fatally shot him with the weapon.
At trial, Smith took the stand and testified that he had no part in the crime but was at home 20 or 30 blocks from the scene at the time of the murder. Smith said that he had been with Harris and Kelly Herrell earlier that day but had left them when they became angry over his refusal to participate in a crime involving illegal drugs. He further testified that he had gone to the police shortly after the crime to tell what he knew because Michael White, a drug dealer for whom the victim, Kenny Jackson, dealt or carried drugs, was looking for Smith to extract information from him and kill him because White believed Smith knew who had been involved in the homicide. Smith stated that Harris and Herrell also dealt drugs for Michael White and had told him earlier on the day of the crime that they knew where some drugs were, but Smith claimed he had no other knowledge of the attempted robbery or murder.
To establish Smith's complicity in the attempted armed robbery and guilt of murder the state relied principally on the testimony of three witnesses: his alleged co-participant, Donald Harris; their mutual acquaintance, Kelly Herrell; and a disinterested passerby, Lyle Spencer.
Donald Harris testified against Smith pursuant to a plea bargain by which he was allowed to plead guilty to manslaughter. During interrogation following his arrest, Harris told the police that Kelly Herrell had planned the armed robbery and had supplied the masks and gun, and that the killing occurred when Harris and Smith attempted to carry out Herrell's plan. At trial, however, Harris changed his story by exculpating Herrell completely, inculpating only Smith and himself, and naming Smith as the instigator, triggerman and supplier of the criminal implements. Harris attributed his prior inconsistent statement during interrogation to insistent pressure by police to implicate Herrell. Furthermore, Harris testified that Smith shot Jackson despite Harris' pleas to let him go and that Smith later said that the killing was necessary because the victim had recognized him and had called out his name.
Kelley Herrell was arrested by the police, who thought there was probable cause to believe that he was involved in the crime, but he was not prosecuted. He testified that he was acquainted with Smith, Harris and Jackson; he had gone to Jackson's *680 house shortly before the murder to loan him a motorcycle helmet; on his way there, he saw Smith and Harris in the neighborhood; Smith was wearing a grey sweatshirt and had a mask and a gun, and Harris was wearing a blue sweatshirt and had a mask; leaving Jackson's house on his bicycle, he heard a gunshot and, looking back, saw Smith and Harris running; Smith still had the gun in his hand and Harris had his mask on.
Lyle Spencer, who was not acquainted with Jackson, Smith, Herrell, or Harris, was leaving the nearby Bus-Stop Lounge, where he had been playing pool, at the time of the murder. He passed by the vacant lot in his car, and saw what appeared to be a fight between three men. He testified that he saw the man in the grey sweatshirt, the tallest of the three, strike the shortest of the three men, who fell to the ground. He heard a gunshot and saw two of the men, one in a grey sweatshirt and one in a blue shirt, run away. He testified that he was unable to see the faces of any of the three men.
The defense was able to bring out some discrepancies and ambiguity in the evidence. On cross-examination, Donald Harris testified that he was taller than Smith. His testimony was thus somewhat inconsistent with the combined testimony of the other prosecution witnesses which tended to identify Smith as the taller person in the grey sweat shirt. A police detective, while testifying as a defense witness, contradicted Harris' trial testimony. He said that Harris in his initial statement to the police voluntarily implicated Kelly Herrell without any pressure from police, and that Harris stated that Herrell planned the robbery and supplied the gun and the masks.

3. Propriety Of Prosecutor's Arguments To Jury
Our review of the record in this case convinces us that during the course of both the guilt and penalty phases of this first degree murder trial the prosecuting attorney made several highly improper arguments to the jury.

A. Referring to Evidence Not Introduced

The most conspicuous improper argument occurred when the prosecutor told the jury that he had another "two dozen witnesses" with additional evidence of the defendant's guilt which he did not deem necessary to present. In the course of the rebuttal portion of his guilt phase closing argument, the prosecutor stated:
I hope that none of you think that when you have a first degree murder case, a capital case, it has to be two weeks long, that it has to involve hundreds of witnesses and hundreds of pieces of evidence. Some of them are like that; most are not. Most homicide cases can be tried in a very short period of time. [The defense counsel objected that the argument referred to evidence outside the record, and the trial court responded, "Again, ladies and gentlemen, you be the judge. You will be the judge shortly. Proceed."] I could have, if I had wanted to, put on probably another two dozen witnesses, people who had nothing whatsoever to ... [Defense counsel renewed his objection, but it was overruled.] Ladies and gentlemen, many, many more witnesses could have been called, but it would have done nothing but drag this case out. It would have had nothing to add to the case. We could have called two dozen witnesses to disprove everthing. We could have done whatever we wanted. We put on the meat of the case for you to decide, for your consideration.
Under La.C.Cr.P. art. 774, the argument of both prosecution and defense "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. * * * The argument shall not appeal to prejudice * * *." Because of this statutory provision (but also for reasons of fairness which extend beyond it), a prosecutor in Louisiana (as well as in almost all other American jurisdictions) is prohibited from intentionally referring to, or arguing on the basis of, facts outside the record, whether at trial or on appeal, unless such facts are *681 matters of common knowledge based on ordinary human experience or matters of which courts may take judicial notice. State v. Kaufman, 304 So.2d 300 (La.1974), appeal after remand, 331 So.2d 16, cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976). See State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Hopper, 251 La. 77, 203 So.2d 222 (1967), vacated on other grounds, 392 U.S. 658, 88 S.Ct. 2281, 20 L.Ed.2d 1347 (1968), on remand 253 La. 439, 218 So.2d 551 (1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 545, 24 L.Ed.2d 504 (1970); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964); State v. Williamson, 145 La. 9, 81 So. 737 (1919); State v. Accardo, 129 La. 666, 56 So. 631 (1911). The most elementary rule governing the limits of argument is that it must be confined to the record evidence and the inferences which can reasonably and fairly be drawn therefrom. Assertions of fact not proved amount to unsworn testimony of the advocate, not subject to cross-examination. American Bar Association Standards for Criminal Justice-The Prosecution Function, Standards 5.8 and 5.9; Annotation, Propriety and Prejudicial Effect of Prosecutor's Argument to the Jury that He Has Additional Evidence of Defendant's Guilt Which He Did Not Deem Necessary to Present, 90 ALR3d 646 (1979). Likewise, it has been recognized that it is impermissible for a prosecutor to indicate to the jury that he has additional evidence of the defendant's guilt which he did not present at trial. United States v. Labarbera, 581 F.2d 107 (5th Cir.1978); United States v. Roberts, 618 F.2d 530 (9th Cir. 1980); Marsh v. State, 272 Ind. 178, 396 N.E.2d 883 (1979); State v. Newlon, 627 S.W.2d 606 (Mo.1982), cert. denied, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); Downey v. State, 103 Nev. 4, 731 P.2d 350 (1987); Breines v. State, 462 So.2d 831 (Fla.App.1984); Williamson v. State, 459 So.2d 1125 (Fla.App.1984); State v. Gammill, 2 Kan.App.2d 627, 585 P.2d 1074 (Kan.App.1978); Commonwealth v. Villalobos, 7 Mass.App. 905, 388 N.E.2d 701 (1979); State v. Anthony, 577 S.W.2d 161 (Mo.App.1979); People v. Keller, 67 A.D.2d 153, 415 N.Y.S.2d 529 (1979); Lopez v. State, 705 S.W.2d 296 (Tex.App. San Antonio 1986); Johnson v. State, 649 S.W.2d 111 (Tex.App.1983), aff'd, 662 S.W.2d 368 (Tex.Crim.App.1984).
Accordingly, it has consistently been held to be reversible error for the prosecutor to express his belief in the guilt of the accused, or the credibility of a key witness, where doing so implies that he has additional knowledge or information about the case which has not been disclosed to the jury. State v. Kaufman, supra; State v. Harrison, 367 So.2d 1 (La.1979); State v. Hamilton, 356 So.2d 1360 (La.1978); State v. May, 339 So.2d 764 (La.1976) (recognizing the stated rule but finding that the prosecutor's comment did not imply to the jury that he had personal knowledge of facts not presented to them indicating the defendant's guilt); see also United States v. Diharce-Estrada, 526 F.2d 637 (5th Cir. 1976); United States v. Lamerson, 457 F.2d 371 (5th Cir.1972); Gradsky v. United States, 373 F.2d 706 (5th Cir.1967); McMillian v. United States, 363 F.2d 165 (5th Cir.1966); United States v. Roberts, 618 F.2d 530 (9th Cir.1980); Cleveland Paper Co. v. Banks, 15 Neb. 20, 16 N.W. 833 (1883); State v. Gunderson, 26 N.D. 294, 144 N.W. 659 (1913); State v. Thayer, 124 Ohio St. 1, 176 N.E. 656 (Ohio 1931); Thompson v. State, 318 So.2d 549 (Fla. App.1975), cert. denied, 333 So.2d 465 (1976); People v. Young, 33 Ill.App.3d 443, 337 N.E.2d 40 (Ill.App.1975); People v. Montevecchio, 32 Mich.App. 163, 188 N.W.2d 186 (1971); ABA Standards, supra; 3 Wharton's Criminal Procedure §§ 523, 524 (12th ed. 1975).
The prosecuting attorney's argument in the present case was not as subtle as an expression of belief in guilt implying access to additional evidence. Instead, he boldly represented outright to the jury that he had additional evidence of appellant's guilt that he simply saw no need to present to them. This argument was highly improper. It was clearly a violation of his duty as an attorney and officer of the court to confine his argument within its lawful scope, and it was a breach of his obligation *682 to seek justice, not merely to convict, as the representative of a government dedicated to fairness and equal justice for all. La. Const., Preamble; Art. I, § 1; La.C.Cr.P. art. 774; ABA Standards of Criminal Justice-The Prosecution Function, Standard 1.1(c); See Ginsberg v. United States, 257 F.2d 950 (5th Cir.1958).

B. Intentional Misstatement of the Evidence and/or Reference to Facts Outside the Record

For the same reasons that a prosecutor's reference to evidence not introduced at trial is highly improper, a prosecutor's intentional misstatement of the evidence to a jury is particularly reprehensible. ABA Standards for Criminal Justice-The Prosecution Function, Standard 5.8(a) Commentary (a); See Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). An attorney may not knowingly make a false statement of material fact to a tribunal. Rule 3.3(a) of the ABA Model Rules of Professional Conduct, adopted in this state as Rule 3.3(a) of the Rules of Professional Conduct. A lawyer, in trial, may not "allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." Rule 3.4(e) of the ABA Model Rules, adopted by this state as Rule 3.4(e) of the Rules of Professional Conduct. This court has repeatedly held that a prosecutor's reference to evidence which had not been admitted at trial is reprehensible and constitutes error. State v. Felde, 422 So.2d 370 (La.1982), cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Prestridge, 399 So.2d 564 (La. 1981); State v. Smith, 196 La. 652, 199 So. 791 (La.1940); State v. Henry, 196 La. 217, 198 So. 910 (1940). When a prosecutor's argument prejudicially refers to matters allegedly within his personal knowledge as prosecutor but not in the evidence, reversible error results. State v. Harrison, 367 So.2d 1 (La.1979); State v. Kaufman, 304 So.2d 300 (La.1974), later appeal, 331 So.2d 16, cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976). This prejudicial type of argument improperly attempts to add to or subtract from the actual evidence in the record (only upon which a conviction may be based) solely through the influence of the prosecutor's official position: Due to respect for the prosecutor's personal knowledge and official expertise, the jury may give greater factual weight to his unsworn factual argument and consequently determine innocence or guilt on the basis of this rather than of the actual evidence properly introduced at trial. State v. Harrison, supra.
On two occasions the prosecuting attorney in argument misstated the testimony of the mother of the victim by telling the jury that she had said that the victim had never been in trouble while in fact the record is devoid of any statement by her on the subject. In his guilt phase closing argument, the prosecutor stated: "Mrs. Jackson said he [the victim] had never been in trouble a day in his life." And in his guilt phase rebuttal, he said:
Ms. Millie Jackson testified that her son had never been in trouble before, words out of her mouth. You may recall that; and you may not. That will be up to you to decide, but that's what's so shocking to hear cheap shots taken by defendants or people that ...
At this point, defense counsel's objections were overruled by the trial court. The misstatements apparently were intentional because they were repetitive and totally without basis in the record.
At another point during his guilt phase closing argument, the prosecuting attorney alleged facts completely outside the record that tended to bolster the credibility of a prosecution witness. He told the jury that Kelly Herrell's trial testimony was consistent with the prior statements he had given to the police:
But Kelly Herrell's statement, ladies and gentlemen, was consistent at all times. From the moment he told the police what *683 happened until he came and testified here today.
Again, the complete lack of evidentiary basis for this argument convinces us that the prosecutor intentionally went outside of the record. (Moreover, information developed after trial and included in the Post-Sentence Investigation Report indicates that Herrell in fact may not have consistently told the same story to police and at trial. That report states that the Official Police Report reveals that Herrell changed the story he told the police several times, and that under the initial version of this story the police did not have probable cause to arrest Smith or Harris. Defense counsel moved for a new trial based on this information but failed to press for an evidentiary hearing to prove the facts set forth in the reports.)
The impropriety of the prosecutor's remarks was further compounded by the fact that the evidence referred to would have been inadmissible had the prosecutor sought to introduce it in a proper manner. The rule has long been established that testimony to establish the credibility of a witness is not admissible until that credibility has been attacked. La.R.S. 15:484 (1928) (Incorporated in La.Code of Evidence art. 607(B) effective January 1, 1989); State v. Joe, 502 So.2d 270 (La.App. 3d Cir.1987); State v. Lewis, 482 So.2d 71 (La.App. 4th Cir.1986). This is the traditional common law rule, and the result is generally the same under the Federal Rules of Evidence. La.Code of Evidence art. 607, comment (b). See generally C. McCormick, On Evidence § 49 (3d ed. 1984); 4 J. Wigmore, Evidence in Trials at Common Law ch. 38 (Chadbourn rev. 1972). Vigorous cross examination and/or the fact that a witness is contradicted by other evidence in the case does not constitute such an attack. See United States v. Thomas, 768 F.2d 611 (5th Cir.1985); United States v. Jackson, 588 F.2d 1046 (5th Cir.1979), cert. denied, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); United States v. Danehy, 680 F.2d 1311 (11th Cir.1982); see generally, J. Weinstein and M. Berger, Weinstein's Evidence §§ 607[08]; 608[08] (1988). Because Kelly Herrell's credibility was not attacked, the prosecutor's assertion that Herrell's statement had been consistent at all times contained facts that were inadmissible as well as being outside the record and perhaps false.
The prosecuting attorney also referred to evidence outside the record in his rebuttal closing argument in the penalty phase. He described the style of life that Smith would lead if he were sentenced to life imprisonment in the state penitentiary:
He goes to prison in [the state penitentiary at] Angola for the rest of his life, and after about, I'd say, eighteen months, two years, he's going to be settled into a whole new life style. He knows he's never going to get out. He's going to make new friends. He's going to have acquaintances; he's going to get visits by his family very often. He's going to be able to have Christmas together with his familybirthdays, holidays. He's going to see his family. [At this point, defense counsel objected but was overruled.] He will continue to have life, to celebrate life. And where is Kenny Jackson's family? Where do they go on his birthday? [Defense counsel again objected and was overruled.] Where do they go? They go visit his grave. He made sixteen years old, and he's shot in the head and brutally murdered. And even more brutal is the fact that he begs for his life. In Angola, it's not all as bad as he tells you about it. You ought to pick up a newspaper sometime and read the Angolite and find out how things are up there. They have a satellite dish.
The living conditions in the state penitentiary at Angola were not in evidence at the trial; indeed, such evidence would have been inadmissible. Furthermore, we have held that the "prison lifestyle" argument is prohibited in capital cases. State v. Kyles, 513 So.2d 265 (La.1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988). Such arguments detract from the jury's fundamental responsibility of making "an `individualized determination' of whether a defendant should be assessed the death penalty based on the *684 `character of the individual and the circumstances of the crime.'" Rushing v. Butler, 868 F.2d 800, 804 (5th Cir.1989) [citing Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) ].

C. Injection of Extraneous Issues

It is improper for the prosecutor to engage in argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused at trial, or the defendant's background, character and crime at the sentencing hearing, under controlling law, or by making predictions of the consequences of the jury's verdict or recommendation. See ABA Standards for Criminal Justice-The Prosecution Function, Standard 5.8(d). Typical examples falling within this category of improper arguments are (i) predictions as to the consequence of an acquittal or a failure to recommend the death penalty upon lawlessness or murders in the community, and (ii) references to the likelihood of other authorities, such as the governor or the appellate courts, correcting an erroneous conviction or sentence, so as to lead the jury to shirk responsibility for its decision. See ABA Standards 5.8, Commentary (d). The prosecutor in the present case was guilty of the first, and very nearly of the second, type of improper argument.
In his rebuttal closing argument in the penalty phase of the trial, the prosecutor told the jury:
[T]hat's why I'm asking you for the death penalty in this case, is people that are out there, they are going to continue to commit these armed robberies, people that are going to commit rapes, people that are going to kill people because they're witnesses against them. That's got to stop. Ladies and gentlemen, in Louisiana armed robbery carries with it a penalty from five years to ninety-nine years. And somebody that's got a prior felony conviction, that enhances the sentence. The least they can get is thirty-three years to one hundred ninety-eight years. What's to keep somebody who's in that situation from taking the life of somebody when they know that if they get caught and that person identifies them that the least they can get is thirty-three years which is more than likely a life sentence for most people? What's to keep them from murdering the person that's a witness against them? What's to keep somebody who makes a decision that they want to rape somebody at gunpoint or knifepoint commit an aggravated rape? And that's life imprisonment, what in the world is to keep them from killing that poor woman if she's the only witness against him? It's very important for you to consider, because that's a choice that he made. And maybe, ladies and gentlemen, just maybe, if one person picks up the paper tomorrow and sees that you came back and made a recommendation that he be put to death, one person that was thinking about going out and committing an armed robbery or a rape, read that this person was put to death because he killed somebody that was a witness against him, if just one person says "Well, I'm not going to kill him," then it's worth it. And I'll submit to you, ladies and gentlemen, that that's what needs to be done. You need to recommend. You need to send the message. We can't tolerate murder any longer.
We have repeatedly held that it is highly improper and prejudicial for a prosecutor to turn his argument to the jury into a plebiscite on crime or to refer to the consequences to society of the jury's verdict. State v. Kyles, supra; State v. Bates, 495 So.2d 1262 (La.1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); State v. Sugar, 408 So.2d 1329 (La.1982); State v. Barrow, 410 So.2d 1070 (La.1982), cert. denied, 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982); State v. Messer, 408 So.2d 1354 (La.1982); State v. Hayes, 364 So.2d 923 (La.1978). Predictions as to the consequence of an acquittal on lawlessness in the community go beyond the scope of the issues in the trial. We conclude that the prosecutor's argument urging the jury to sentence the defendant to death so that future potential murderers would be deterred *685 went beyond the scope of permissible argument in a capital case.
In his rebuttal closing argument in the penalty phase of the trial, the prosecutor told the jury:
You're not killing him. You twelve people are not going to kill him. You are not responsible, if you so desire, for sending him to the electric chair. I'm not responsible. Judge McKay and the courtroom people here aren't responsible. His attorney is not responsible. Donald Harris is not responsible. Most definitely Kenny Jackson is not responsible. The only person in this courtroom today, all day and this evening, that's responsible for what's happened is that man right there, Norvell Smith, not you all.
The United States Supreme Court, this court, and others have held that arguments which diminish the jury's sense of responsibility for the verdict and sentencing recommendation introduce an arbitrary factor into the sentencing phase which may result in reversible error. Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); State v. Willie, 410 So.2d 1019 (La.1982), later appeal, 436 So.2d 553 (1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984); State v. Berry, 391 So.2d 406 (La. 1980), cert. denied, 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981); and authorities cited therein. In this instance, the prosecutor's argument, though suggesting that the jury should not feel responsible for sending the defendant to the electric chair, did not suggest that the higher court or the governor would correct a mistake in sentencing. Thus, although the prosecutor's remarks ventured dangerously close to an attempt to lead the jury to shirk its responsibility for the sentencing recommendation, we cannot say that this statement, in itself, was sufficient to deprive the defendant of a fair trial. Since we look at the argument of the prosecutor as a whole, however, and not at isolated statements, this remark of the prosecutor must be considered along with the others. See United States v. Herberman, 583 F.2d 222, 231 (5th Cir.1978); State v. Copeland, 530 So.2d 526, 544-45 (La.1988).

4. Prejudicial Effect of Prosecutor's Arguments
Before a reviewing court may declare the erroneous admission of evidence to have been harmless, or not prejudicial, the state must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. State v. Walters, 523 So.2d 811 (La.1988); State v. Green, 493 So.2d 1178 (La.1986); State v. Vessell, 450 So.2d 938 (La.1984); State v. Martin, 458 So.2d 454 (La.1984) (erroneous denial of admission of evidence); State v. Banks, 439 So.2d 407 (La.1983), later appeal, 482 So.2d 92 (La.App. 4th Cir.1986); State v. Landry, 414 So.2d 674 (La.1982); State v. Vaughn, 431 So.2d 358, 371, n. 8 (La.1982) (erroneous denial of admission of evidence); State v. Phagans, 412 So.2d 580 (La.1982); State v. Gibson, 391 So.2d 421 (La.1980); See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This is the minimum safeguard that should be afforded in a case in which the improper introduction of evidence or facts may have affected the jury's verdict of guilt of first degree murder or its decision to recommend the death penalty. See, e.g., Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), in which the Supreme Court held that because "[i]t is important to avoid error in capital sentencing proceedings" the harmless error rule set forth in Chapman v. Californiawhich held that if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may standapplies to the erroneous introduction at a sentencing hearing of a psychiatrist's testimony regarding the future dangerousness of the accused, and that because defense counsel had not received adequate notice of the examination of the accused by that psychiatrist the accused had been deprived of his right to counsel, that the admission of that psychiatrist's testimony was not harmless under the Chapman test, and that the defendant's death sentence must be set aside. Id.
*686 We see no reason why this harmless error rule should not also apply to the erroneous and improper arguments of a prosecutor which present to the jury his inadmissible unsworn testimony to facts outside the record, not subject to cross-examination. Cf., South Carolina v. Gathers, ___ U.S. ___, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) in which the United States Supreme Court affirmed the South Carolina Supreme Court's decision reversing a death sentence because of the improper closing argument of the prosecutor at the sentencing phase in which he read to the jury at length from a religious tract the victim was carrying and commented on personal qualities of the victim that he inferred from the slain man's possession of the religious tract and a voter registration card. Evidently, the majority of the high court considered the prosecutor's actions prejudicial per se or so clearly not harmless as to make any comment in that regard unnecessary. But see O'Connor, J. dissenting, 109 S.Ct. at 2216 ("Because the [religious tract] was already in evidence without objection and could have been read by the jury even if the prosecutor never mentioned it, the prosecutor's reading of that document during his closing argument may constitute harmless error.")
Applying the foregoing harmless error test, we cannot say that the prosecuting attorney's improper arguments to the jury were harmless beyond a reasonable doubt. The credibility of Kelly Herrell and Donald Harris, whose testimony was the only evidence linking Norvell Smith with the crime and identifying him as its author, was seriously questioned during the trial.
Harris admitted that he was a coperpetrator of the attempted armed robbery that resulted in the killing. He acknowledged that he was testifying pursuant to a plea bargain by which the state would allow him to plead guilty to manslaughter, for which he could have received a sentence of no more than twenty-one years in prison. He admitted that his trial testimony exculpating Herrell and depicting Smith as the principal villain was different from the story he first told police in which Herrell was the mastermind of the Halloween mask robbery scheme. His excuse for changing his story at trial, viz., that his first story had been coerced by the police, was contradicted by one of the interrogating officers and was not corroborated by any other witness.
Kelly Herrell inculpated Smith and Harris while denying any involvement on his part. In his own testimony, however, he placed himself at the scene of the crime before and during its commission. Furthermore, he admitted that he had gone to the victim's house to lend him a motorcycle helmet only minutes prior to the homicide and that he had spoken to Harris and Smith who were waiting in the vacant lot nearby.
Norvell Smith took the stand and denied his involvement in the offense or his presence during its commission. His testimony was not controverted by anyone except Harris and Herrell. Lyle Spencer, the disinterested passerby, did not know Smith and could not identify him as one of the culprits. Smith testified that Harris, Herrell and the victim, Kenny Jackson, dealt drugs for the same drug dealer. He said that several hours prior to the crime and on the same day Harris and Herrell told him that they knew where they could get some drugs and asked him to join them. According to Smith, he refused, they became angry and he left their company.
Although the state presented a reasonably strong case against the defendant if full credit is given to the testimony of Harris and Herrell, it is also a case in which honest, fair-minded jurors might very well have failed to convict the defendant as charged or to recommend the death penalty, in the absence of the prosecutor's improper arguments referring to evidence and facts outside the record, viz., that the state could have called two dozen additional witnesses to prove the defendant's guilt, that Mrs. Jackson said her son, the victim, had never been in trouble, and that Kelly Herrell's trial testimony was consistent with the statements he gave to the police. Furthermore, there is a reasonable possibility that the jury's decision to recommend the death penalty was contributed to by the prosecutor's other improper and borderline *687 arguments, viz., that life in prison is not unpleasant or difficult, that the jury's decision to condemn Smith would deter future murders, and that the jury is not truly responsible for its life or death decision. Under these circumstances, it is completely impossible for us to say that the state has demonstrated beyond a reasonable doubt that the prosecutor's improper comments did not contribute to the defendant's conviction and sentence of death.

5. Errors Specifically Assigned
Appellant designated with particularity four assignments of error: (1) The trial court erred in denying defendant's pretrial motion to suppress the statement of Donald Harris; (2) The trial court erred in denying defendant's motion to suppress Kelly Herrell's identification of Harris and Smith; (3) The trial court erred in denying the defendant's motion for a new trial; and (4) The trial court erred in denying the defendant's motion for post verdict judgment of acquittal. Defendant also assigned as a supplemental assignment of error the trial court's ruling during the trial that the prior inconsistent statement of Donald Harris was inadmissible. We reviewed these assignments first and concluded that none of them has any immediate reversible merit. See State v. Bay, 529 So.2d 845, 852 n. 6 (La.1988). The alleged errors underlying assignment (3) and the supplemental assignment may have merit in future proceedings, however, and the defendant's right to raise them at that time is hereby reserved. With respect to the supplemental assignment of error, we note that defendant's new trial will be governed by the provisions of the newly enacted La. Evidence Code art. 613.

Decree
For the reasons assigned, the defendant's conviction and sentence are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED TO TRIAL COURT.
COLE, J., concurs.
MARCUS and LEMMON, JJ., concur and assign reasons.
WATSON, J., concurs for the reasons assigned by LEMMON, J.
MARCUS, Justice (concurring).
I consider that in a death case we should review all assignment of errors whether or not filed with the trial judge or briefed or argued in this court. However, the assignment of errors should be based upon an objection at the time of the occurrence (La. Code Crim.P. art. 841) except that during the penalty phase any prejudicial or other aggravating factor is reviewable, whether or not objected to, in order to determine if the sentence of death is excessive. La. Code Crim.P. art. 905.9, Rule 905.9.1, Supreme Court Rule 28. An unobjected-to error during the guilt phase is reviewable in the context of ineffective assistance of counsel in an application for post-conviction relief. I agree that the prosecutor's closing argument in rebuttal during the guilt phase implying access to additional evidence was reversible error. It was properly objected to by defense counsel at the time of the occurrence. Accordingly, I concur in the reversal of defendant's conviction and sentence.
LEMMON, Justice, concurring.
I agree that the conviction and sentence must be reversed because of the prosecutor's gross misconduct in closing argument in the guilt phase, especially by referring to evidence of defendant's guilt which was not introduced at trial and by arguing that a state witness' trial testimony was consistent with prior statements to the police not in evidence. I do not necessarily agree with the full extent of the discussion of the scope of appellate review in capital cases.