**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 02-30909**

---

**CHRISTOPHER SEPULVADO,**

**Petitioner-Appellant,**

**versus**

**BURL CAIN, Warden, Louisiana State Penitentiary; RICHARD L.**
**STADLER,**

**Respondents-Appellees.**

---

**Appeal from the United States District Court**
**for the Western District of Louisiana**
**(00-CV-596)**

---

January 13, 2003

Before SMITH, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Christopher Sepulvado, a Louisiana state prisoner sentenced to death for capital murder, requests a certificate of appealability (COA) in order to appeal the denial of habeas relief. **DENIED.**

I.

In 1993, after being convicted of first-degree murder of his six-year-old stepson, Sepulvado was sentenced to death. (Sepulvado's wife, Yvonne Sepulvado, originally charged with first-

---

[*] Pursuant to 5th Cir. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

degree murder, was convicted of manslaughter. *State v. Sepulvado*, 672 So.2d 158, 161 n.1 (La. 1996).)

On Thursday, March 5, 1992, [Sepulvado] married the victim's mother, Yvonne. The next day, Friday, the victim came home from school, having defecated in his pants. Yvonne spanked him and refused to give him supper. [Sepulvado] returned home from work at approximately 9:00 p.m. That night, the victim was not allowed to change his clothes and was made to sleep on a trunk at the foot of his bed. On Saturday, the victim was not allowed to eat and was again made to sleep on the trunk in his soiled clothes. At around 10:00 a.m. on Sunday, [Sepulvado] and the victim were in the bathroom, preparing to attend church services. [Sepulvado] instructed the victim to wash out his soiled underwear in the toilet and then take a bath. When the victim hesitated to do so, [Sepulvado] hit him over the head with the handle of a screwdriver several times with enough force to render him unconscious. Thereafter, the victim was immersed in the bathtub which was filled with scalding hot water.

Approximately three hours later, at around 1:50 p.m., [Sepulvado] and his wife brought the victim to the emergency room at the hospital. At that time the victim was not breathing, had no pulse, and probably had been dead for approximately thirty to sixty minutes. All attempts to revive the victim were futile. The cause of death was attributed to the scald burns covering 60% of the victim's body, primarily on his backside. There were third degree burns over 58% of the body and second degree burns on the remaining 2%. The scalding was so severe that the victim's skin had been burned away. In addition to the burns, medical examination revealed that the victim had been severely beaten. The victim's scalp had separated from his skull due to hemorrhaging and bruising.

2

> Also, there were deep bruises on the victim's buttocks and groin which were not consistent with accidental injury.
>
> At trial, [Sepulvado] admitted that he hit the victim with a screwdriver, but contended that the victim fell into the tub accidentally. However, the state presented expert testimony that the burn marks on the victim's body did not indicate he accidentally fell into the tub, since there were no signs of splash marks that would result from a struggle. The experts testified that the marks were consistent with the victim being dipped or immersed into the scalding water.

*Id.* at 162.

Sepulvado's conviction and sentence were affirmed by the Louisiana Supreme Court. *Id*. at 171. The United States Supreme Court denied *certiorari*. *Sepulvado v. Louisiana*, 519 U.S. 934, *reh'g denied*, 519 U.S. 1035 (1996).

In 1997, Sepulvado filed for state post-conviction relief, claiming: (1) ineffective assistance of counsel; (2) denial of due process due to the termination of his counsel; (3) prosecutor's misstatements of law regarding mitigation; (4) State's failure to provide him necessary funds for investigation of his post-conviction claims; (5) lethal injection violated the Louisiana and United States Constitutions; (6) retroactive application of the contemporaneous objection rule; (7) State's failure to adequately and timely notify him of sentencing issues and its intention to introduce certain evidence; (8) unconstitutional court-ordered psychiatric evaluation; (9) improper jury instructions; (10)

unconstitutionally vague application of "especially heinous, atrocious or cruel" aggravating circumstance; and (11) discrimination in selection of grand jury forepersons.

The state habeas judge had served as trial judge. In 1998, an evidentiary hearing was held on the ineffective assistance claims, discussed *infra*. Both of Sepulvado's trial counsel, a psychiatrist, and an expert defense attorney testified.

In April 1999, that court denied post-conviction relief. And, in March 2000, the Louisiana Supreme Court denied an application for a supervisory or remedial writ.

Later that month, Sepulvado filed for federal habeas relief, pursuant to 28 U.S.C. § 2254. He raised the same 11 issues as in state court. In late 2001, the district court denied the petition; nevertheless, it ordered an evidentiary hearing on the grand jury forepersons claim. **Sepulvado v. Cain**, No. 00-596 (W.D. La. 21 Nov. 2001) (**Original Opinion**). That December, pursuant to a Rule 59(e) motion, the district court withdrew the habeas denial, pending the evidentiary hearing.

The evidentiary hearing was conducted by a magistrate judge in April 2002. That June, the magistrate judge recommended denial of the forepersons claim. That August, the district court adopted the recommendation and denied relief. **Sepulvado v. Cain**, No. 00-596 (W.D. La. 9 Aug. 2002).

4

Sepulvado's COA application was denied the next month (September 2002).

## II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Sepulvado must obtain a COA in order to appeal the habeas denial. 28 U.S.C. § 2253(c)(1)(A). For the 11 claims raised in his § 2254 petition, he seeks certification on six: (1) ineffective assistance of counsel; (2) discrimination in the selection of grand jury forepersons; (3) unconstitutional, court-ordered psychiatric evaluation; (4) prosecutor's misstatements of law regarding mitigation; (5) improper jury instructions; and (6) retroactive application of the contemporaneous objection rule.

To obtain a COA, Sepulvado must make "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2). In general, he must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the [federal habeas] petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Another statement of the standard is that Sepulvado must show "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong". *Id.*

5

To obtain a COA for a claim denied on procedural grounds, Sepulvado must not only make the above-described showing concerning the merits of a claim, but also must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling". *Id*.

Moreover, a COA request is viewed against the backdrop, under AEDPA, for obtaining habeas relief. In that regard, and if a COA is granted, we review state court decisions only to determine whether they were "contrary to, or involved an unreasonable application of, clearly established Federal law" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(1) & (2).

A.

Sepulvado contends that his trial counsel, Brown and Toups, provided ineffective assistance, contrary to the Sixth Amendment. To establish ineffective assistance, Sepulvado must satisfy the well-known two-prong standard: counsel's performance was deficient, falling below an objective standard of reasonableness; and this deficient performance prejudiced the defense, such that there is a reasonable probability that, but for such performance, the outcome of the trial would have been different. *E.g., Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

6

Sepulvado claims ineffective assistance at the trial's guilt and penalty phases. (In addition to instances of claimed ineffective assistance addressed in this part, Sepulvado's ineffectiveness claim concerning grand jury forepersons is addressed in part II.B.)

In general, Brown was to take the lead at the guilt phase; Toups, the penalty phase. As noted, each testified at the state habeas evidentiary hearing. As discussed below, none of the ineffectiveness claims satisfies the standard for receiving a COA.

1.

Sepulvado maintains: Brown failed to interview a witness for the State, Dr. McCormick, before questioning him at trial on the defense theory that the murder was an "impulse" killing; instead of interviewing that witness pre-trial, Brown relied on interview notes made by Sepulvado's prior attorney; Dr. McCormick answered that the homicide was intentional, not impulsive, thereby discrediting the defense theory; and not having expected that answer, Brown was unprepared to call his own expert to testify to the impulsive nature of the killing.

For this and all other ineffective assistance claims, the state court ruled them "completely without a scintilla of merit". Having presided at trial, the state habeas judge noted:

> In no case either during the guilt-innocence phase or the penalty phase did this Court observe that either attorney['s] performance had fallen below an objective standard of reasonableness and that the dereliction had

7

> prejudiced the defendant to the extent that
> the trial has been rendered unfair and the
> jury verdict on either guilt or innocence or
> penalty suspect.

For the federal petition, the district court held counsel's failure to investigate the effectiveness of the "impulse" theory was not deficient performance. Noting that 14 witnesses testified during the penalty phase, it ruled "Brown conducted ample investigation in an effort to mitigate petitioner's sentence". *Original Opinion* at 7. More to the point, it ruled there had been no showing that the introduction of the "impulse" theory would have "altered the outcome of the trial". *Id*.

Sepulvado has adduced no other evidence in support of the "impulse" theory. For example, he has not identified a witness whose opinion would be contrary to Dr. McCormick's. Reasonable jurists would not find the district court's assessment debatable or wrong.

2.

Sepulvado claims Brown failed, during the penalty phase, to offer neuropsychological test results showing Sepulvado was positive for four of five brain dysfunction factors. This constitutes deficient performance, according to Sepulvado, because Toups (Sepulvado's other trial counsel) testified at the state habeas evidentiary hearing that *he* would have brought such testing to the jury's attention.

8

As noted, the state court dismissed all of the ineffective assistance claims as meritless. The federal district court found that counsel had submitted evidence regarding the neuropsychological issue through the testimony of a clinical social worker, who testified about the "high number of deaths in [Sepulvado]'s past, his childhood experiences and his alcoholism as mitigating evidence". *Original Opinion* at 9. The district court ruled that counsel's failure to perceive the need to "bolster this expert with additional testimony" was a "tactical decision" that "did not amount to a deficiency in representation". *Id*.

The report containing the brain dysfunction analysis indicated that such dysfunction would not mitigate responsibility for the crime. For this and similar reasons, Brown decided not to open the door to the introduction of such facts. Reasonable jurists would not find the district court's assessment debatable or wrong.

3.

Sepulvado also challenges Toups' comment in his penalty phase opening statement that the decision facing the jury "would be a tough one for [Toups]".

Again, the state court summarily dismissed the ineffective assistance claims. Although Sepulvado presented this claim in federal district court, the court did not address it in its opinion.

9

Notwithstanding the challenged statement, Toups encouraged the jury to conclude that Sepulvado should be sentenced only to life in prison. When read in the context of Toups' entire statement, reasonable jurists would not debate whether the petition should have been resolved in a different manner or that this issue is adequate to deserve encouragement to proceed further.

4.

As noted, Toups was to primarily handle Sepulvado's representation during the penalty phase. Nevertheless, Brown participated in the representation for that phase. Sepulvado contends Brown's performance was deficient at this stage because he was: "fatigued" and "stressed out" by the guilt phase; and at a "psychological disadvantage", having been the losing attorney during the guilt phase.

Again, the state court summarily held Sepulvado's ineffective assistance claims were meritless. Although the issue was presented in federal district court, the court did not address it in its opinion.

Even if Brown's participation could be considered deficient performance, the record shows that Toups examined nine of the 14 penalty phase witnesses. Also, Sepulvado has offered no basis for finding the outcome of the penalty phase would have been different had Toups conducted all of the examination. Reasonable jurists would not debate whether the petition should have been resolved in

10

a different manner or that this issue is adequate to deserve encouragement to proceed further.

B.

Sepulvado contends his due process and equal protection rights were violated because the State has discriminated against black venire members in the selection of grand jury forepersons. Although Sepulvado is not black, he has standing to make the claim. *Campbell v. Louisiana*, 523 U.S. 392 (1998).

The magistrate judge, after the evidentiary hearing, recommended that Sepulvado had established a *prima facie* discrimination claim. The magistrate judge recommended, and the district judge agreed, however, with the state habeas ruling that the claim was procedurally barred. The state court had ruled: "In this case there was no objection, prior to the conviction, of the grand jury process through a timely filing of a motion to quash. This claim is therefore not properly before the Court...." (That court also ruled that the claim was meritless, because the court had "appoint[ed] a number of minorities to serve as grand jury foremen....")

"It is undisputable that under Louisiana law, a challenge to the legality of the grand jury venire must be made by a pretrial motion to quash." *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997), *cert. denied*, 525 U.S. 859 (1998). Sepulvado seeks to overcome this procedural bar by claiming cause for the failure to

11

move to quash and resulting prejudice.  Reasonable jurists would not find the district court's assessment debatable or wrong.

1.

First, Sepulvado claims the failure to timely raise the issue was caused by ineffectiveness of counsel.  Ineffective assistance may be a cause for procedural default, but only if the attorney's performance was deficient under *Strickland*.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Sepulvado contends only that counsel were "deficient" for failing to raise the grand jury issue at trial.  Apparently, he claims this "deficiency" reached unconstitutional levels as described in *Strickland* and incorporated by *Murray*.

As the report and recommendation, adopted by the district court, stated:  "Counsel's performance is not rendered constitutionally deficient merely because he is insufficiently prescient to file a motion in 1992 [when Sepulvado was indicted] based on a rule of law that will not be announced until 1998 [in *Campbell*]".

In short, prior to Sepulvado's indictment (1992), *Campbell* (1998) had not been decided.  And, *Powers v. Ohio*, 499 U.S. 400 (1991), had held only that white defendants had standing to challenge a prosecutor's use of peremptory strikes against black potential jurors; grand jurors were not at issue.  Moreover, *Hobby v. United States*, 468 U.S. 339 (1984), had earlier rejected a due

12

process challenge to discrimination in the selection of a black federal grand jury foreperson.

*Campbell* did "not state a new Fifth Amendment equal protection rule" and "was dictated by the Court's precedents". *Peterson v. Cain*, 302 F.3d 508, 513 (5th Cir. 2002). On the other hand, this does not mean that an attorney's failure to raise such a claim in 1992 fell below the objective level of competence required by *Strickland*.

Absent such a deficiency, there is "no inequity in requiring [Sepulvado] to bear the risk of attorney error that results in a procedural default". *Murray*, 477 U.S. at 488.

2.

In the alternative, Sepulvado has not satisfied the COA standard concerning the prejudice portion for "cause" *and* "prejudice". The report and recommendation, adopted by the district court, noted:

> Petitioner has not attempted to articulate how the foreman selection process (in connection with a grand jury that indicts on mere probable cause found by 9 of 12 members) worked to his actual prejudice when he was convicted by a lawfully chosen petit jury of twelve persons who unanimously found him guilty beyond a reasonable doubt.

Sepulvado states that, had a timely motion to quash been made, the judgment would have been reversed on appeal on that basis; and, on remand, he might have been offered a life sentence plea. He offers no basis for this conclusory plea-claim.

13

In the alternative, Sepulvado urges that, absent a plea on remand, a second trial would not have resulted in the death penalty. Again, he provides no support for this conclusory claim. (Along this line, Sepulvado does not make an "actual innocence" claim as an alternative to a required showing of "cause" and "prejudice".)

## C.

Sepulvado next claims the state court improperly ordered a psychiatric evaluation for him.

## 1.

Both the state and district court, however, noted that Sepulvado, at the time of that order, had filed a "Notice of Defense based upon Mental Condition" and, therefore, ruled the court-ordered examination was proper. *Original Opinion* at 16. Reasonable jurists would not find the district court's assessment debatable or wrong.

## 2.

Alternatively, Sepulvado complains that, for the evaluation, he was not advised of his rights to remain silent and to an attorney. *See Estelle v. Smith*, 451 U.S. 454, 467-68 (1981). Although this issue was raised in state court, that court did not address it.

The district court first noted that no evidence was adduced by Sepulvado supporting these allegations. *Original Opinion* at 16

14

n.5. It then assumed *arguendo* that such a constitutional violation occurred, but held the error was harmless because none of the psychiatrist's findings were introduced at trial. ***Original Opinion*** at 17; *see also, e.g.*, ***Kotteakos v. United States***, 328 U.S. 750 (1946). Reasonable jurists would not find the district court's assessment debatable or wrong.

## 3.

Sepulvado summarily claims his Eighth Amendment right to a constitutionally sound sentencing procedure was compromised because the existence of the evaluation caused him to strategically refrain from "explor[ing] ... psychiatric defenses". Although presented to them, neither the state nor district court addressed this specific issue in their opinions.

Sepulvado does not describe what these claimed "psychiatric defenses" would have been; nor does he claim they would have led to a different outcome. Reasonable jurists would not debate whether the petition should have been resolved in a different manner or that this issue is adequate to deserve encouragement to proceed further.

## D.

Sepulvado claims that, during *voir dire*, the prosecutor misstated the law concerning mitigating evidence. *See* ***Lockett v. Ohio***, 438 U.S. 586 (1978). The prosecutor stated: prospective jurors *were* to "consider" mitigating evidence to determine whether

15

the mitigating factors "fit"; they should be "open minded" with regard to the evidence; and "considering" the evidence did not compel a juror to "accept" it.

There was no contemporaneous objection. It does not appear that either the state or federal court addressed whether this claim is procedurally barred because of this failing. Nor does the State assert such a bar here.

The state court ruled the statements were not misstatements of the law, and, in any event, did not justify post-conviction relief. Likewise, the district court held the prosecutor did not misstate the law. *Original Opinion* at 13.

*Lockett* holds jurors must not "be *precluded from considering*, *as a mitigating factor*, any aspect ... that the defendant proffers as a basis for a sentence less than death". 438 U.S. at 604 (first emphasis added). Reasonable jurists would not find the district court's assessment debatable or wrong.

E.

Sepulvado claims the jury was improperly instructed on the reasonable doubt standard. This claim is based on *Cage v. Louisiana*, 498 U.S. 39, 41 (1990): an instruction is unconstitutional if "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause". The Court refined this test: the inquiry is whether it is reasonably likely that the

16

jury applied the instruction in an unconstitutional manner. *See Victor v. Nebraska*, 511 U.S. 1, 6 (1994); *Estelle v. McGuire*, 502 U.S. 62, 72 n.4, (1991) (citing *Boyde v. California*, 494 U.S. 370, 379-80 (1990)).

The jury was instructed:

> It is sufficient that the State prove the guilt of the defendant beyond a reasonable doubt.
>
> \*\*\*
>
> A reasonable doubt is not a mere possible doubt; it should be *actual doubt*. It is such a doubt as a reasonable person would seriously entertain. It is a doubt that one could have reason for. It is an *honest misgiving, or doubt,* arising from proof or lack of proof in the case.

(Emphasis added.) Sepulvado claims use of "actual doubt" and "honest doubt" instructed the jury that, *for acquittal*, a standard higher than "reasonable doubt" was required.

Noting it was well aware of *Cage* when it instructed the jury, the state court ruled that the instruction was a proper statement of the law. The district court ruled that, although the phrase "actual doubt" was used, the instruction as a whole correctly conveyed the concept of reasonable doubt. *Original Opinion* at 21.

*Cage* held unconstitutional an instruction which equated "reasonable doubt" with "grave uncertainty" and "actual substantial doubt", requiring only a "moral certainty" rather than an "evidentiary certainty". 498 U.S. at 41. The Court held "actual

17

substantial doubt", in that context, connoted, for acquittal, a higher standard of doubt than "reasonable doubt". *Id*.

Although the trial court used the phrase "actual doubt", it did not include a substantiality requirement. Moreover, by comparison, *Victor* held the use of "moral certainty" did not render it unconstitutional (that phrase is not in the instruction at issue). 511 U.S. at 16. In the light of the entire instruction, reasonable jurists would not find the district court's assessment debatable or wrong.

F.

For his final claim, Sepulvado maintains his rights were violated by the arbitrary application of Louisiana's contemporaneous objection rule. Sepulvado's failure to identify those claimed instances when an objection should have been made is discussed below.

*State v. Smith*, 554 So.2d 676, 678 (La. 1989), crafted, for cases in which the death penalty was applicable, an exception to the rule that the Louisiana Supreme Court would not review an error for which an objection had not been made in the trial court; instead, unobjected-to errors would be reviewed, despite the contemporaneous objection rule.

Sepulvado's trial (1993) occurred during the period between the decisions in *Smith* (1989) and *State v. Taylor*, 669 So.2d 364 (La.), *cert. denied*, 519 U.S. 860 (1996). For the guilt phase of

18

trial, *Taylor* repudiated the exception to the contemporaneous objection rule, even for those cases tried after *Smith* — as was Sepulvado's. 669 So.2d at 369.

On Sepulvado's direct appeal, decided post-*Taylor*, the Louisiana Supreme Court held that defendants, including Sepulvado, could not claim reliance on *Smith*, because they could not have known, during the guilt phase, "if [they] would ultimately receive the death penalty". 672 So.2d at 162.

*State v. Wessinger*, 736 So.2d 162 (La.), *cert. denied*, 528 U.S. 1050 (1999), extended this logic by repudiating the *Smith* exception even for the penalty phase, *but only applying that repudiation prospectively*.

The state court held itself bound by *Taylor*, and thus denied relief on this issue. The district court noted that the failure to make contemporaneous objections "may be raised as ineffective assistance of counsel on post conviction relief". *Original Opinion* at 14. It then reviewed the claimed failures to object and found that "no *Strickland* violations had been committed". *Id*.

Sepulvado makes no showing that his attorneys relied on *Smith* for not objecting when Sepulvado believes they should have, during the guilt phase. Along this line, Sepulvado does not even describe these unobjected-to errors, even though the district court addressed them in its opinion and held no ineffective assistance.

Reasonable jurists would not find the district court's assessment debatable or wrong.

III.

For the foregoing reasons, each COA request is

***DENIED.***