655 So.2d 1326 (1995)
STATE of Louisiana
v.
Kevin SCALES.
No. 93-KA-2003.
Supreme Court of Louisiana.
May 22, 1995.
Rehearing Denied June 30, 1995.
*1329 David W. Price, Baton Rouge, Carol A. Kolinchak, John Holdridge, New Orleans, for applicant.
Richard P. Ieyoub, Atty. Gen., Hon. Douglas P. Moreau, Dist. Atty., John W. Singuefield, Lori T.L. Nunn, Asst. Dist. Atty., for respondent.
MARCUS, Justice.[*]
Kevin Scales was indicted by the grand jury for the first degree murder of Kenny Ray Cooper, in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendations of the jury.
On appeal, defendant relies on twenty-eight assignments of error for reversal of his conviction and sentence.[1]

FACTS
On the night of July 30, 1991, the victim, Kenny Ray Cooper, was working as a cashier and cook at the Church's Fried Chicken restaurant located at 7941 Airline Highway in Baton Rouge. Working with Cooper were Melanie Livious, the manager, and Charletter Lee, another cashier and cook. At approximately 10:00 p.m., defendant and two other men (later identified as Kevin Lewis and Henry Guillory) entered the restaurant. Defendant went to the bathroom while the two other men went to the counter. One man asked Ms. Livious for a glass of water. When she asked the other man what he wanted, the first man ordered her to open the register. The two men jumped across the counter and one pointed a gun at her stomach (Ms. Livious was pregnant at the time) while the other took money from the cash registers. During this time, Ms. Livious heard the victim say, "man, what are you doing." She heard the sounds of a struggle and three gunshots.
Ms. Lee testified she was in the kitchen cleaning the stove and heard the victim knock at the kitchen door. She let him in and saw another man standing near the bathroom. Looking up front, she saw a man pointing a gun at Ms. Livious. She put her head down and heard a scuffle in the lobby near the bathroom. She then heard three shots. The three men ran out of the restaurant, and Ms. Livious called 911.
The victim's body was found lying face down in a puddle of blood. His pockets were turned inside out. He had no pulse or respiration. A later autopsy revealed that the victim had sustained five separate gunshot wounds from a .38 caliber weapon and a .25 caliber weapon. Two of the wounds were fatal and were caused by the .38 caliber weapon. It was established that defendant had a .38 caliber five-shot revolver, and the victim was in possession of a .25 caliber automatic borrowed from his roommate.

Assignment of Error No. 5
Defendant contends that the trial judge erred in allowing hearsay testimony at the pretrial Prieur hearing.
At the Prieur hearing, the state sought to introduce evidence of defendant's participation in the robbery of a Pizza Hut restaurant. Officer Darryl Rice of the Baton Rouge Police Department testified that Shalitha *1330 Dixon, an employee of Pizza Hut, witnessed the robbery and positively identified defendant in a photographic lineup as one of the perpetrators. Defendant objected to this testimony as hearsay, and the trial judge overruled his objection. Ms. Dixon subsequently testified at trial that she was able to identify defendant because she recognized him as a high school classmate and knew his sisters.
In State v. Hatcher, 372 So.2d 1024, 1027 (La.1979), we recognized that hearsay evidence offered by the state at a pretrial Prieur hearing "adequately informed defendant of the nature and factual content of the other-crime evidence sought to be introduced by the state." Nonetheless, defendant contends that hearsay evidence may not be used by the state to meet its burden of establishing clear and convincing evidence at the Prieur hearing.[2] We disagree.
La.Code Evid. art. 104(A) provides:
Preliminary questions concerning ... the admissibility of evidence shall be determined by the court.... In making its determination it is not bound by the rules of evidence.... (emphasis added).
The last sentence of this article is "based on a recognition that most of the rules of evidence are intended to regulate the quality and reliability of evidence reaching the untrained juror, not the court." La.Code Evid. art. 104, comment (d). We believe the trial judge in a Prieur hearing is competent to determine whether hearsay statements are sufficient to meet the state's burden of establishing clear and convincing evidence. Moreover, any concerns about the reliability of Officer Rice's testimony are groundless, since Ms. Dixon later testified at trial. The trial judge did not err in denying defendant's hearsay objection at the pretrial Prieur hearing.
Assignment of Error No. 5 is without merit.

Assignment of Error No. 6
Defendant contends the trial judge erred in allowing admission of other-crime evidence at trial. He argues the fact that he committed an earlier armed robbery has no value in proving he had specific intent to kill. He further argues that there was no proof of plan, scheme or identity because the modus operandi of each robbery was different.
The state introduced evidence showing defendant participated in the July 2, 1991 robbery of a Pizza Hut restaurant located at 4763 Airline Highway in Baton Rouge. The evidence showed defendant and three other men entered the restaurant about 5:30 p.m. One man asked to be seated while the other three went to the bathroom. Immediately thereafter, the three men returned with guns drawn and demanded that the manager open the cash register. Kathy Murray, manager of the Pizza Hut, and Gay Nunnery, a friend with her at the time of the robbery, identified Kevin Lewis and Henry Guillory as two of the robbers. Shalitha Dixon, another employee, identified defendant. She testified that she recognized defendant because she went to high school with him and knew both of his sisters.
La.Code Evid. art. 404(B) provides that other crimes evidence may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." Article 404(B) does not affect the law of other crimes evidence as set forth in State v. Prieur, 277 So.2d 126 (La.1973), and its progeny. La. Code Evid. art. 1103. Under these cases, the state is required to prove that the defendant committed the other crime by clear and convincing *1331 evidence. State v. Davis, 449 So.2d 466, 468 (La.1984); Prieur, 277 So.2d at 129. The probative value of the other crimes evidence in relation to the charged offense should be weighed in light of its possible prejudicial effect. Id. at 128.
In the instant case, it is clear there is great similarity between the Pizza Hut robbery and the Church's robbery. Both robberies targeted fast food restaurants along Airline Highway in Baton Rouge, and were committed less than one month apart. In both instances, one or more of the perpetrators went to the bathroom area to check the rear of the premises prior to the robbery taking place. In both instances, the perpetrators asked for service before demanding that the register be opened. The three participants in the Church's robbery (Kevin Lewis, Henry Guillory and defendant) were identified by eyewitnesses as being involved in the Pizza Hut robbery.
Additionally, defendant's participation in the Pizza Hut robbery is relevant because of his contention at trial that he did not know of his companions' intent to rob Church's, that he did not intend to commit a robbery, and that he shot the victim in self-defense. Therefore, evidence of the Pizza Hut robbery was admissible to prove motive, intent, knowledge, and absence of mistake or accident in connection with proving the element of the state's first degree murder case (that defendant was engaged in the commission of an armed robbery) and to rebut his claim of self-defense. Given the probative value of this evidence, we find any prejudicial effect is outweighed.
Lastly, we reject defendant's contention that the state failed to present clear and convincing evidence of his involvement in the Pizza Hut robbery. As stated earlier, Shalitha Dixon, an eyewitness to the Pizza Hut robbery, was familiar with defendant, since she went to high school with him and knew his sisters. Ms. Dixon was able to identify defendant in a photographic line up, a physical line up and in court. The trial judge did not err in admitting other-crime evidence at trial.
Assignment of Error No. 6 is without merit.

Assignment of Error No. 8
Defendant contends that the trial judge erred in denying his motion to suppress two tape recorded statements he made to police shortly after his arrest. He argues these statements were made pursuant to an illegal arrest and were made after he invoked his right to counsel.
On August 1, 1991, three days after the shooting, Crimestoppers received an anonymous tip that defendant had been involved in the Church's shooting and lived at 2560 Arbutus. Police confirmed that defendant lived at 2560 Arbutus, based on the address he had given when he was previously arrested. They also matched defendant's fingerprints with fingerprints taken from the area where the shooting occurred. Based on this information, police obtained a warrant for defendant's arrest, and arrested him on August 2, 1991. Defendant subsequently made two taped statements to the police. Defendant contends the statements are inadmissible because the warrant for his arrest failed to contain sufficient information to establish probable cause.
Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense. State v. Elliot, 407 So.2d 659 (La. 1981); State v. Wilson, 467 So.2d 503 (La.), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of the experience of reasonable people, not legal technicians. State v. Billiot, 370 So.2d 539 (La.), cert. denied, 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979).
In the instant case, while the anonymous Crimestoppers tip may have been insufficient *1332 to establish probable cause by itself, the police were able to corroborate this tip with evidence of defendant's fingerprints found in the area of the restaurant where the murder was committed. Under the totality of the circumstances test set forth in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), we find the arrest warrant was supported by probable cause.
Defendant next contends that the statements are inadmissible because they were made after he invoked his right to counsel. In support, he presented the testimony of his two sisters, who stated he asked for a lawyer several times after he had been arrested at his home. The investigating officer, Greg Phares, testified that neither defendant nor his family requested an attorney at any time. He stated he orally advised defendant of his rights three times prior to defendant making his statements, and defendant waived his rights on all occasions.
The trial judge obviously accorded greater weight to Detective Phares' testimony than he did to the testimony of defendant's family members. In reviewing the trial judge's ruling on admissibility, his conclusions as to the credibility of witnesses are accorded great weight. State v. Messiah, 538 So.2d 175, 178 (La.1988); State v. Neslo, 433 So.2d 73, 80 (La.1983). Therefore, defendant failed to establish that he invoked his right to counsel prior to interrogation.
Lastly, defendant contends his statements were not voluntary because police withheld medical treatment, as an inducement for him to talk, for three gunshot wounds he received in the robbery. We find no merit to this contention. There is no evidence that a promise of medical treatment was made to defendant before he made his statements. Moreover, defendant's wounds, received three days earlier, were not serious and did not appear to cause him any significant pain. The trial judge did not err in denying defendant's motion to suppress.
Assignment of Error No. 8 is without merit.

Assignments of Error Nos. 11, 12, 13
Defendant contends the trial judge erred when he overruled his objections made during the prosecutor's opening statement in the guilt phase. He argues the prosecutor improperly referred to the death penalty during his opening statement, a concern only appropriate to the penalty phase.
The article dealing with the state's opening statement, La.Code Crim.P. art. 766, provides:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
In State v. Copeland, 530 So.2d 526, 544 (La.1988), we found that a reference to the death penalty in the state's opening statement was permissible, since La.Code Crim.P. art. 766 "permits an explanation of the nature of the charge and the nature of this charge was that it carried with it the possibility of the death sentence." Hence, we find no error in the prosecutor's reference to the death penalty in his opening statement.
Next, defendant argues the prosecutor improperly read to the jury the text of La.R.S. 14:20 (the justifiable homicide statute) and commented that he morally agreed with the statute.
As stated above, La.Code Crim.P. art. 766, allows the prosecutor to explain the nature of the charge. Although defendant was charged with first degree murder, an understanding of the justifiable homicide statute was necessary to completely explain the first degree murder charge and defendant's theory of self-defense. However, the prosecutor's reference to his moral agreement with the justifiable homicide statute constituted a personal opinion of the prosecutor and arguably fell outside of the scope of art. 766. Nonetheless, this brief comment does not rise to the level of reversible error.
Finally, defendant argues the prosecutor unduly appealed to emotion and prejudice *1333 when he referred to the fact that one of the robbers "had a gun stuck in the stomach of a woman that was eight months pregnant" and "she had a baby prematurely, she thinks, as a result of getting the other gun in this case stuck in her stomach." This was a reference to cashier Melanie Livious' testimony that one of the robbers (not the defendant) pointed a gun at her stomach during the robbery. She testified she was eight months pregnant at the time, and her baby, due on August 23, was born on August 13.
The mention of Ms. Livious' pregnancy referred to facts admitted in evidence at trial. Whether the baby was born prematurely was a matter for the jury to decide. The trial judge did not err in overruling defendant's objections made during the prosecutor's opening statement.
Assignments of Error Nos. 11, 12 and 13 are without merit.

Assignment of Error No. 14
Defendant contends the trial judge erred by allowing testimony regarding an earlier robbery at the Church's restaurant where the victim, Kenny Cooper, was employed. Defendant argues this testimony was irrelevant and prejudicial, since he was not involved in any way in this robbery.
During the trial, Ms. Charletter Lee, an employee of Church's, testified that the restaurant had been robbed several weeks prior to the instant robbery. She stated that Cooper arrived at the restaurant shortly after this robbery, and was upset by it. The state emphasized that defendant had nothing to do with this earlier robbery.
Relevant evidence is defined in La. Code Evid. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial judge determines whether evidence is relevant by deciding whether it bears a rational connection to the fact which is at issue in the case. State v. Williams, 341 So.2d 370, 374 (La.1976).
In the instant case, the earlier robbery of the victim's place of employment was relevant to important material facts at issue. Defendant claimed he shot the victim in self-defense after the victim accosted him with a gun and demanded payment for drugs he earlier sold to defendant. Therefore, evidence of the earlier robbery was relevant to the state's contention that the victim was carrying the gun because he was apprehensive about being robbed again, not because he was a drug dealer. Any prejudicial effect of the testimony was negligible, since the prosecutor made it clear that defendant had nothing to do with the earlier robbery. The trial judge did not err in allowing testimony concerning the earlier robbery.
Assignment of Error No. 14 is without merit.

Assignment of Error No. 22
Defendant contends the prosecutor made several improper comments during his closing argument in the penalty phase.
Defendant first argues that the prosecutor improperly referred to Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), which deals with victim impact evidence, during his closing argument.
La.Code Crim.P. art. 774 allows the prosecutor to address "the law applicable to the case." However, in State v. Elam, 312 So.2d 318, 321-22 (La.1975), we cautioned against a direct reference by the prosecutor to an opinion by name. Nonetheless, although we disapproved of this practice, we did not find it to be reversible error.
A review of the prosecutor's comments in the instant case show they are not an incorrect or misleading statement of the Payne decision. Hence, there is no merit to this contention.
Next, defendant takes issue with the prosecutor's reference to other potential witnesses *1334 he could have called to bolster the victim impact testimony. During his discussion of Payne and victim impact evidence, the prosecutor stated: "I have, if I wanted, dozens of those witnesses. It's a big family. I chose to call three because I didn't want to put you through any more of it because I know it's hard."
In State v. Smith, 554 So.2d 676 (La.1989), we found that a reference to additional witnesses made during the guilt phase constituted an impermissible comment on matters outside of the record. We found this argument was "highly improper" because it represented to the jury that the prosecutor had additional evidence of defendant's guilt.
The instant case is clearly distinguishable from Smith, since the comments occurred at the penalty phase, after defendant's guilt had already been determined. Moreover, the prosecutor's comments suggest that the additional witnesses would only provide cumulative victim impact evidence. While we continue to express disapproval of any reference by the prosecutor to matters outside of the evidence, we conclude that the comments in the instant case do not rise to the level of reversible error.
Defendant next contends that the prosecutor made impermissible references to the lifestyle he would lead at Angola if he were given life imprisonment. During his rebuttal, the prosecutor stated:
He argues for life without suspension of probation and parole in the penitentiary for his client in his argument. He asked for his client for the things, the pleasures in life that you get even in the penitentiary. He asks that he be allowed to wake up every day and see the sky and the sun. And he denied that to Kenny Cooper. Even in prison, he'll be allowed to eat good food, and wear clean clothes, and watch TV, and visit with friends, and have companions, legal process, he'll get to enjoy having recreational activities. He gets to enjoy a lot out of life even in the penitentiary that he denied to Kenny Copper.... You forfeit the right, even in prison, to have those pleasures of life.... He doesn't deserve, even in prison, to have the pleasures of life.
In State v. Smith, 554 So.2d at 683, we found a prosecutor's reference to living conditions at Angola was improper since these conditions were not in evidence at trial. We held that this argument, coupled with other improper and borderline arguments, constituted reversible error. However, in State v. Kyles, 513 So.2d 265 (La.1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988), we found that similar comments, while improper, did not render the jury's sentencing recommendation unreliable.
In the instant case, it is clear that the prosecutor's prison lifestyle comments, while perhaps not as extensive as those in Smith and Kyles, are improper. Nonetheless, neither Smith nor Kyles held that these comments, standing alone, are reversible error. The living conditions at prisons are to some extent common knowledge, and it is unlikely that the prosecutor's comments told the jurors anything they did not already know. Accordingly, we adhere to our holding in Kyles that these comments, while improper, are not enough to render the jury's sentencing recommendation unreliable.
Lastly, defendant contends that the prosecutor made comments which diminished the jury's responsibility in imposing the death sentence. During his penalty phase closing argument, the prosecutor commented that "[e]ven if you give him the death penalty today, it takes years, as you know before ... it's carried out, as you know." Immediately after these comments, the prosecutor commented upon the placement of responsibility for the defendant's impending death sentence:
And remember, you know, I don't think any of you chose to be here. You're good citizens, and this is a hard thing. But you were summoned here by the law. And you didn't put him here. He put himself here. You're not responsible for him facing this *1335 death verdict. He's responsible for it. And I don't want you to transfer that, or feel guilty, or feel like it's your responsibility. Yes, your decision. But if you give him the death penalty, which I think you should, then you're not responsible for it. He's responsible for it. He's responsible for putting you in this position. The law is responsible for bringing you here, and he's responsible for what he gets. Not you. (emphasis added).
In Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the United States Supreme Court held that arguments which diminish the jury's sense of responsibility for the verdict and sentencing recommendation introduce an arbitrary factor into the sentencing phase which may result in reversible error. The typical comment in this area refers to the presence of appellate review which could correct any error made by the jury. See, e.g., State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Willie, 410 So.2d 1019 (La.1982), later appeal, 436 So.2d 553 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984). In State v. Smith, 554 So.2d at 685, we dealt with comments similar to those in the instant case. Although we held that the prosecutor's remarks "ventured dangerously close to an attempt to lead the jury to shirk its responsibility," we were unable to say that "this statement, in itself, was sufficient to deprive the defendant of a fair trial."
In the instant case, the prosecutor made it clear to the jury that it was their decision to impose the death penalty. He did not suggest that a higher court would correct a mistake in sentencing. Under these circumstances, the prosecutor's comments did not diminish the jury's sense of responsibility for sentencing.
In sum, we conclude that none of the prosecutor's comments during the closing argument of the sentencing phase constitute reversible error. Further, the cumulative effect of these comments did not deprive defendant of his right to a fair sentencing. State v. Copeland, 530 So.2d 526, 545 (La. 1988); State v. Graham, 422 So.2d 123, 137 (La.1982).
Assignment of Error No. 22 is without merit.

Assignment of Error No. 24
Defendant contends the trial judge erred in allowing the state to present victim impact testimony, and allowing the prosecutor to comment as to the victim's family's opinion of the appropriate sentence.
During the penalty phase, the state was allowed to call three witnesses for the purpose of presenting victim impact testimony. The state called the victim's father, his brother-in-law and his sister.
This case was tried after the United States Supreme Court's decision in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (finding no Eighth Amendment bar to victim impact testimony), but prior to this court's opinion in State v. Bernard, 608 So.2d 966 (La.1992) (delineating the scope of the admissibility of victim impact testimony in Louisiana). In Bernard, we explained that some evidence of the murder victim's character and of the impact of the murder on the victim's survivors is admissible as relevant to the circumstances of the offense or to the character and propensities of the offender. However, we found that introduction of detailed descriptions of the good qualities of the victim or particularized narrations of the emotional, psychological and economic sufferings of the victim's survivors, which go beyond the purpose of showing the victim's individual identity and verifying the existence of survivors reasonably expected to grieve and suffer because of the murder, treads dangerously on the possibility of reversal because of the influence of arbitrary factors on the jury's sentencing decision. Whether or not particular evidence renders a hearing so fundamentally unfair as *1336 to amount to a due process violation must be determined on a case-by-case basis.
Our review of the victim impact testimony in this case indicates that it falls within the Bernard guidelines. Each witness succinctly stated that he or she loved and missed the victim and was deeply affected by his loss. Their descriptions of the good qualities of the victim were not overly detailed. Accordingly, there was no error in the admission of victim impact testimony.
Defendant next contends that the prosecutor improperly referred to the victim's family's opinions during his closing argument when he stated, "the only proper penalty in this case is a verdict that says he should face the death penalty.... The family requests it."
In Bernard, we held that evidence of the victim's survivors' opinions about the crime and the murderer is clearly irrelevant to any issue in a capital sentencing hearing.
In the instant case, the survivors' themselves expressed no opinion as to whether defendant should face the death penalty; rather, this issue was only raised in the prosecutor's closing argument. Although this argument was improper, the remark was brief and it was unlikely to have influenced the jury in a prejudicial manner.
Assignment of Error No. 24 is without merit.

Assignment of Error No. 25
Defendant contends there was insufficient evidence to support his conviction for first degree murder.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. In addition, when a defendant claims self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986). However, under La.R.S. 14:21, "a person who is the aggressor or who brings on a difficulty" cannot claim the right of self-defense.
In the instant case, defendant, armed with a revolver, entered the Church's restaurant along with two other men with whom he had recently robbed another fast food restaurant in the same area. Defendant admitted in a taped statement that he went to the Church's restaurant to commit a robbery. While his two companions were in the front of the restaurant taking money from the cash registers, defendant went into the rear lobby near the bathrooms, where the victim was located. Witnesses heard the victim say something, then heard a struggle and gunshots. The victim's body was found in the rear lobby area, face down in a pool of blood, with his pockets turned inside out. His billfold was found outside of the restaurant, near the location of the getaway car. The victim sustained five gunshot wounds, two of which were fatal and were caused by.38 caliber bullets. It was established defendant was in possession of a .38 caliber revolver. Defendant's finger-prints were found in the rear lobby area. Since the evidence indicates that defendant brought on a difficulty by engaging in an armed robbery at the time of the shooting, he cannot claim the right of self-defense. Moreover, even assuming defendant could claim the right of self-defense, the evidence shows the state has met its burden of establishing that the homicide was not committed in self-defense.
Under the circumstances presented, we find that a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant was guilty of the first degree murder of Kenny Cooper.
Assignment of Error No. 25 is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL

(Assignment of Error No. 23)
Defendant contends his court-appointed attorney provided him with ineffective assistance of counsel at trial.
*1337 An ineffective assistance of counsel claim may be addressed on direct review if the record discloses evidence needed to decide the issue. State v. Ratcliff, 416 So.2d 528, 530 (La.1982) (record was sufficient since ineffective assistance claim was explored in detail during a hearing on a motion for new trial). However, the issue is more properly raised by application for post-conviction relief in the trial court, where a full evidentiary hearing may be conducted if warranted. State v. Stowe, 93-2020 (La. 4/11/94), 635 So.2d 168; State v. Deloch, 380 So.2d 67 (La.1980); State v. Malveaux, 371 So.2d 820 (La.1979).
In the present case, the record does not contain sufficient evidence to resolve defendant's ineffective assistance of counsel claim on direct review. Defendant may re-raise this issue by application for post-conviction relief in the trial court.

SENTENCE REVIEW
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.Code Crim.P. art. 905.9 provides that this court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1, which provides:
Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(a) PASSION, PREJUDICE OR ANY OTHER ARBITRARY FACTORS
Defendant contends that arbitrary factors were introduced into the proceedings by the state's conduct of the voir dire, its presentation of evidence, and argument. We have considered these contentions earlier in the opinion and determined they do not constitute reversible error. There is no evidence that passion, prejudice or any other arbitrary factors influenced the jury in its recommendation of the death sentence.

(b) STATUTORY AGGRAVATING CIRCUMSTANCES
Defendant contends that the state presented insufficient evidence to support the aggravating circumstance that he knowingly created a risk of death or great bodily harm to more than one person. He argues he only fought and killed one person in a room apart from the other victims of the robbery.
The jury in its verdict found the following aggravating circumstances:
(a) the offender was engaged in the perpetration or attempted perpetration of armed robbery, first degree robbery or simple robbery (La.Code Crim.P. art. 905.4(A)(1));
(b) the defendant knowingly created a risk of death or great bodily harm to more than one person (La.Code Crim.P. art. 905.4(A)(4)).
Armed robbery is the taking of anything of value from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64.
In the instant case, the evidence amply supports the jury's finding that defendant was engaged in the perpetration of an armed robbery, since he was a principal to the robbery of the Church's restaurant. In addition, other evidence shows that the defendant robbed the victim's person. The defendant was alone with the victim during the struggle. An investigation of the crime scene revealed that the victim's pockets were turned inside out, and the victim's billfold was found behind the convenience store where the perpetrators had parked the getaway car. Because of the jury's finding *1338 of one statutory aggravating circumstance is supported by the record, we find it unnecessary to determine whether the jury erred in finding that defendant knowingly created a risk of death or great bodily harm to more than one person. Where one aggravating circumstance is upheld on review, the failure of another aggravating circumstance would not invalidate a death penalty. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). This is true so long as the evidence of the possibly unproven circumstances did not inject an arbitrary factor into the proceedings. State v. Tassin, 536 So.2d 402 (La.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989). No arbitrary factor was injected in the proceedings, since the conduct of the co-perpetrators formed part of the res gestae of the offense.

(c) PROPORTIONALITY TO THE PENALTY IMPOSED IN SIMILAR CASES
Federal constitutional law does not require a proportionality review. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Nonetheless, La.Sup. Ct.R. 28, § 4(b) provides that the district attorney shall file with this court a list of each first degree murder case tried after January 1, 1976 in the district in which sentence was imposed. Including the instant case, the state's list reveals that 50 first degree murder cases were tried in East Baton Rouge Parish between January 1, 1976 and May 29, 1992. Our research reveals that East Baton Rouge Parish juries have recommended the death penalty in eight cases since January 1, 1976. Six of those cases involved murders committed during the perpetration or attempted perpetration of an armed robbery.[3]
Our inspection of these cases shows that the penalty in the instant case is not disproportionate. For example, in State v. Williams, 392 So.2d 619 (La.1980), the 37-year-old defendant approached the partially-crippled manager of a service station, who was counting receipts with his 12-year-old son, and demanded the money. When the manager resisted, the defendant shot him, grabbing the money on his way out. He attempted to fire at two customers but his gun misfired. At the time of the killing, he was on parole for simple burglary. In State v. Clark, 387 So.2d 1124 (La.1980), the 27-year-old defendant and another man forced their way into the Red Lobster restaurant and held the assistant manager at gun and knife point while they emptied the safe. The defendant had worked for the restaurant until that evening, when he quit after an argument with the assistant manager. When another argument erupted, the defendant used his butcher knife to stab the victim 35 times, then shot him. He had been using drugs for a decade. As a juvenile, he had convictions for DWI, drug distribution, obstructing an officer and driving violations. In State v. Williams, 383 So.2d 369 (La.1980), the 27-year-old defendant and another man armed themselves and entered an A & P supermarket. When the elderly security guard attempted to draw his weapon, the defendant shot him in the face at point-blank range with his sawed-off shotgun. As they completed the robbery, the defendant accidentally shot two customers in the leg. He had misdemeanor convictions for resisting arrest and theft.
In the instant case, defendant shot the victim, an employee of the restaurant, three times during an armed robbery of the restaurant. We conclude, therefore, that the sentence of death imposed in this case was not disproportionate with the other first degree murder convictions in this district.
According to the Uniform Capital Sentence Report and the Capital Sentence Investigation *1339 Report, defendant, a black male of low intelligence, was 19 years old at the time the crime was committed. He has never been married. Although the Uniform Capital Sentence Report indicates that he has two children, the Capital Sentence Investigation Report mentions only that he has one daughter. He completed the 11th grade in school. Defendant has a history of juvenile offenses dating back to 1986. As an adult, he has only one misdemeanor conviction. At the time of the crime, defendant had charges pending against him for armed robbery and for simple arson. Defendant's psychiatric history reveals no history of mental illness, nor is such illness present in his family. He has never been treated for any mental illness or drug addiction. The reports indicate that the defendant daily consumed large amounts of liquor and marijuana.
After having considered the above factors, we are unable to conclude that the sentence of death in the instant case is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Hence, based on the above criteria, we do not consider that defendant's sentence of death constitutes cruel, excessive, or unusual punishment.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed for all purposes except that this judgment shall not serve as a condition precedent to execution as provided by La.R.S. 15:567 until (a) defendant fails to petition the United States Supreme Court timely for certiorari; (b) that Court denies his petition for certiorari; (c) having filed for and been denied certiorari, defendant fails to petition the United States Supreme Court timely, under their prevailing rules, for applying for rehearing of denial of certiorari; or (d) that Court denies his application for rehearing.
NOTES
[*] Judge Henry L. Yelverton, Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis. Johnson, J. not on panel. Rule IV, Part 2, § 3.
[1] Assignments of error 1-4, 7, 9-10, 15-21 and 26-28 do not represent reversible error and are governed by clearly established principles of law. They will be reviewed in an appendix that will not be published but will comprise part of the record in this case.
[2] In support, defendant relies on State v. Tucker, 602 So.2d 59 (La.App. 1st Cir.1992). In Tucker, the court of appeal found that hearsay evidence was insufficient to meet the state's burden at the Prieur hearing of establishing clear and convincing proof that defendant was the person who committed the other crimes, but ultimately concluded that any error in admitting the evidence was harmless. This court denied defendant's writ application with the notation, "the result is correct," apparently disapproving of the court of appeal's reasoning. 604 So.2d 1320 (La.1992). In his concurrence to the writ denial, Chief Justice Calogero stated, "La.C.E. art. 104(A) allows trial courts to consider hearsay in their pretrial hearings on matters of admissibility."
[3] Of these, three sentences have been vacated. State v. Clark, 492 So.2d 862 (La.1986); State v. Williams. 392 So.2d 619 (La.1980); State v. Clark, 387 So.2d 1124 (La.1980). One defendant has been executed. State v. Williams, 383 So.2d 369 (La.1980). Another has had his conviction overturned, State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278, and another is pending before this court, State v. Feltus Taylor, No. 93-KA-2201.