664 So.2d 729 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Joseph Earl LIVINGS, Defendant-Appellant.
No. CR95-251.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1995.
Writ Denied February 28, 1996.
*731 Michael Harson, Lafayette, Keith A. Stutes, Asst. Dist. Atty., Robert L. Odinet, Asst. Atty. Gen., for State of La.
G. Paul Marx, Lafayette, for Joseph Livings.
Before THIBODEAUX and WOODARD, JJ. and KNIGHT [*], J. Pro Tem.
WOODARD, Judge.
Defendant, Joseph Livings, appeals his convictions for possession of cocaine and possession of drug paraphernalia. We affirm and remand with instructions.

FACTS
On February 7, 1994, at about 10:30 pm., defendant, Joseph Livings, and another male were standing in the street in a high drug traffic area. Acting on information received over his radio, Deputy John Trahan of the Lafayette Sheriff's Department drove to where Livings was standing and approached him and the other male. Noticing that Livings was nervous and fidgety, Trahan became concerned for his safety and conducted a pat down search of Livings. Finding a crack pipe on Livings as a result of the search, Trahan then arrested Livings. The crack pipe was later analyzed and found to contain cocaine residue.

ACTIONS OF THE TRIAL COURT
Livings pled not guilty to one count of possession of cocaine, a violation of La.R.S. 40:967(C), and one count of possession of drug paraphernalia with intent to use, a violation of La.R.S. 40:1033. On October 11, 1994, the trial judge heard and denied Livings's motion to suppress; Livings was then tried before a jury and found guilty on both counts. On December 12, 1994, he was sentenced to eight years at hard labor on the first count and six months in parish jail on the second count. Livings now appeals his conviction.

LAW
Article 920 of the Louisiana Code of Criminal Procedure provides the scope of review on appeal:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
Livings specifies seven assignments of error as follows:
1. The trial court erred in failing to suppress items seized from the interior of defendant's clothing.
2. The bill of information was prejudicially and unconstitutionally drafted in that it recited other crimes.
3. The trial court erred in refusing to allow the defendant to present evidence to the jury regarding the reasonableness of the police conduct in the case.

*732 4. The trial court erred in allowing the state to introduce the opinion of its police officer, while prohibiting defendant from asking for opinion from the same officer.
5. The trial court erred in holding a hearing in the presence and with the participation of the district attorney regarding defendant's right to waive his fifth amendment privilege.
6. The trial court erred in allowing the district attorney to introduce the certificate of the crime lab despite the fact that the defendant had timely subpoenaed the technician.
7. The trial court erred in allowing counsel to argue about the effect of appellate courts and to present appellate decisions to the jury.
The court has also discovered an error patent and addresses that error first.

ERROR PATENT
In compliance with article 920, all appeals are reviewed for errors patent on the face of the record. After a careful review of the record, we have found one error patent. According to La.Code Crim.P. art. 930.8, the trial court shall inform the defendant of the prescriptive period for post-conviction relief at the time of sentencing. The record does not show that the court so informed the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art. 921. Since the three-year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, prescription is not yet running.
The purpose of the notice of Article 930.8(C) is to inform the defendant of the prescriptive period in advance; thus, this court directs the district court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and then to file written proof in the record of the proceedings that the defendant received the notice. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant contends that the trial court erred in failing to suppress items seized from searching him.
After a hearing on October 11, 1994, the trial judge denied the defendant's motion to suppress. Livings claims that the search which revealed a crack pipe with cocaine residue was an unreasonable warrantless search. Unreasonable searches and seizures are prohibited by both the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution. An illegal detention of a person is considered an unreasonable seizure. It is well settled that a seizure and search conducted without a warrant issued upon probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Tatum, 466 So.2d 29 (La.1985).
A form of seizure which does not require a warrant or probable cause is an investigatory stop made pursuant to La.Code of Crim.P. art. 215.1(A). Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The right to make an investigatory stop and question the individual detained must be based upon reasonable cause or reasonable suspicion to believe that the person has been, is, or is about to be engaged in criminal conduct. La.Code Crim.P. art. 215.1(A) and State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. Belton, 441 So.2d 1195, and State v. Hall, 581 So.2d 337 (La.App. 3 Cir.1991).
A generalized suspicion or "hunch" that an individual is involved in criminal conduct is not sufficient to detain the individual or his automobile. A police officer must have a particularized suspicion based upon articulable facts. See State v. Thibodeaux, 531 So.2d 284 (La.App. 3 Cir.1987); State v. *733 Thompson, 543 So.2d 1077 (La.App. 2 Cir.), writ denied, 551 So.2d 1335 (La.1989); and State v. Bunnell, 517 So.2d 439 (La.App. 1 Cir.1987). If the police officer has a specific suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
However, although a police officer is not always justified in frisking a suspect for weapons after a lawful stop, State v. Hunter, 375 So.2d 99 (La.1979), a weapon frisk is justified under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27, 88 S.Ct. at 1883 (1968). It is sufficient that an officer establish a "substantial possibility" of danger by pointing to particular facts which support such a reasonable inference. State v. Bolden, 380 So.2d 40, 42 (La. 1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). Statutory authority, La.Code Crim.P. art. 215.1(B), provides for an officer conducting an investigatory stop to conduct a pat down search of the detainee's outer clothing for dangerous weapons. As the courts have noted, in many situations the circumstances that justify the investigatory stop also warrant the frisk. State v. Mingo, 93-827 (La.App. 1 Cir. 6/24/94), 638 So.2d 1209; State v. Rodriguez, 476 So.2d 994 (La.App. 1 Cir.1985).
Livings claims that Deputy Trahan was not justified in frisking him. However, Trahan was on narcotics patrol that evening, a dangerous assignment, and received a report on his radio that two black males, one shirtless and having a large amount of drugs on his person, were in the middle of the road at a certain location on Hilda Street, a dangerous area of town. As Trahan approached the two men, he noticed the one with a shirt on, Livings, was acting very nervous and attempting to conceal something. Fearing for his safety, Trahan, an experienced officer, asked Livings if he could search him. Livings refused and Trahan instead conducted a pat down for weapons. While frisking Livings, Trahan felt a crack pipe in defendant's pants. Trahan knew it was a crack pipe because he had handled crack pipes numerous times before and knew how they felt. When Trahan subsequently raised Livings's shirt, the crack pipe visibly protruded from defendant's pants. Trahan then advised Livings that he was being arrested, handcuffed him, and read him his Miranda rights.
Considering the above case law and the facts, Deputy Trahan had the reasonable suspicion necessary to conduct a stop and frisk. Based on an informant's tip, he knew that Livings and the other person were in possession of drugs. Furthermore, he knew Livings was in a high drug traffic area, and as Trahan approached Livings, Trahan's fears and suspicions were confirmed when Livings reacted nervously and attempted to conceal something. In State v. Cormier, 94-537 (La. App. 3 Cir. 11/2/94), 649 So.2d 528, this court held that these were all factors that could be taken into account in deciding the question of reasonable cause.
We note that Trahan's reaching underneath defendant's shirt to seize the crack pipe was proper under the "plain feel" exception. State v. Matthews, 94-2112 (La. App. 4 Cir. 4/26/95), 654 So.2d 868, as Trahan had tactile "knowledge" of the object as a crack pipe. This analysis requires determining whether, upon the officer's touch during the pat down, the object's shape or structure made it immediately identifiable as contraband. State v. Parker, 622 So.2d 791 (La. App. 4 Cir.), writ denied, 627 So.2d 660 (La.1993). At the hearing on the motion to suppress, the prosecutor and defense counsel questioned Trahan on this issue, and the issue was also explored at trial. Trahan said he knew it was a crack pipe from his experience in handling them while working in narcotics for two years. Although admitting crack pipes varied in sizes, he insisted that they were all similar in shape. This testimony was essentially not rebutted. While the "plain feel" exception seems a tenuous check on an officer's ability to invade a suspect's right to privacy, in this instance the trial judge found Trahan's experience and knowledge sufficient. Deferring to the trial judge's discretion, we cannot say there was an invasion of defendant's privacy rights beyond *734 that already authorized by the officer's search for weapons.
Thus, based on the totality of circumstances, Trahan had "articulable knowledge" of particular facts which provided reasonable grounds for the investigatory stop and for him to infer that he may be in danger, thus warranting a limited weapons search resulting in the discovery of the contraband. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
By his second assignment of error, Livings contends that the bill of information was prejudicially and unconstitutionally drafted because it recited other crimes.
Livings was convicted of offenses which allow for multiple offender sentence enhancement under La.R.S. 40:982. Pursuant to this statute, the prosecution listed his prior convictions in the bill of information, charging the underlying crimes. At the start of trial, the deputy clerk read the bill to the jury, including the allegations of the prior convictions. The State introduced into evidence defendant's records of convictions for the prior offenses. Livings failed to object when the bill of information was read to the jury and stipulated to the introduction of his records of convictions. Since this assignment appears to challenge the facial constitutionality of La.R.S. 40:982, as well as the presentation to the jury of allegations of defendant's other crimes, this issue is an error patent discoverable by the mere inspection of pleadings and proceedings, which an appellate court is entitled to review despite defendant's failure to object at trial. State v. Green, 493 So.2d 588 (La.1986).
Livings cites La.Code Crim.P. art. 483 and State v. Prieur, 277 So.2d 126 (La.1973), for the proposition that evidence of other crimes is inadmissible. Notwithstanding, article 483 allows an exception if an allegation of a prior offense is necessary to fully charge the offense. Prior convictions are necessary to fully charge the offense only when the State seeks to convict the defendant under a statute which provides a greater sentence when the offender has previously been convicted of the same or another crime. State v. Norwood, 538 So.2d 682 (La.App. 4 Cir.1989). Such a statute is La. R.S. 40:982. For article 483 to apply, the formal charge instituting prosecution must allege that the defendant has been convicted previously of the same offense. State v. Bouzigard, 286 So.2d 633 (La.1973); State v. Rodriguez, 572 So.2d 358 (La.App. 1 Cir. 1990), writ denied, 576 So.2d 46 (La.1991). Thus, it is evident, from a reading of the unambiguous language of article 483 and the pertinent case law, that there was no statutory violation. Furthermore, the indictment in the case sub judice contains only that information allowed under La.Code Crim.P. art. 483.
Additionally, as the Louisiana Supreme Court explained in State v. Pounds, 359 So.2d 150 (La.1978), it is a basic constitutional mandate that in a criminal prosecution the accused be informed of the nature and cause of the accusation against him. Unless the defendant is informed as to prior offenses, he will not know if he will stand trial for a misdemeanor or a felony, whether the prior convictions are under the same statute, or whether they are too remote in time to warrant the enhanced penalty. Id. Thus, the inclusion of the details of the prior conviction in the bill of information did not violate defendant's constitutional rights, but instead protected them, as explained in Pounds.
Although, it was not error for the prior convictions to be contained in the indictment, an issue exists, nevertheless, as to whether the records of the prior convictions should have been introduced at trial and whether the bailiff should have read that part of the bill of information that included the prior offenses, since sentencing was not a jury issue. Notwithstanding, we note that the trial judge did issue a limiting instruction directing the jury not to use the information of prior convictions in determining Livings's guilt.
We could find no Louisiana case law dealing with these issues in the context of La. R.S. 40:982, but the proper analysis of similar issues was performed by the Louisiana Supreme Court in Green, 493 So.2d 588. In Green, the defendant was convicted of third-offense *735 theft, in violation of La.R.S. 14:67, which also contained a multiple offender enhancement provision. The prosecutor included the two previous theft convictions in the indictment, which was read in full to the jury. Defense counsel objected, claiming the evidence of past crimes was not an essential element of the offense, but he was overruled. He then stipulated to the previous crimes, and this stipulation was later repeated to the jury. Defense counsel neither requested a limiting instruction nor objected to the trial court's failure to give one.
Defendant appealed his conviction, claiming La.R.S. 14:67 was unconstitutional in that it violated the Due Process Clause of the Fourteenth Amendment by authorizing the use of past convictions without requiring a limiting jury instruction that the prior convictions are relevant only for purpose of enhancing the penalty. This court affirmed, finding that because defendant did not object at trial to the failure to give a limiting jury instruction, La.Code Crim.P. art. 801 prevented him from raising the issue on appeal. Green, 493 So.2d 588.
The Louisiana Supreme Court reversed, initially noting that defendant's due process attack should not be disregarded because defense counsel failed to object to the trial court's failure to give limiting jury instructions. Id. Citing a number of its past decisions, the court stated that the facial unconstitutionality of a statute on which a conviction is based is an error discoverable by the mere inspection of pleadings and proceedings, without inspection of the evidence, which an appellate court is entitled to review, even though the defendant does not comply with the assignment of error procedure. Id.
The court further held that, based on United States Supreme Court decisions, a one-stage recidivist trial procedure would, in the absence of a mandatory limiting jury instruction, "fall below the minimum level the fourteenth amendment will tolerate." Green, 493 So.2d at 591. The Green court concluded that La.R.S. 14:67 was not unconstitutional on its face, because although it does not require a limiting jury instruction, neither does it prohibit one. In the instant case, the trial judge instructed the jury on the limited purpose of the evidence of prior convictions, thus meeting the Green test.
Unlike in Green, Livings testified at his trial in the case sub judice. He claims he had to take the witness stand in order to explain the first offense. Although Livings admitted to having had a problem with crack cocaine in the past, no reference was made on direct or cross-examination to Livings's prior convictions. The only reference to defendant's past experience with crack was his admission that he had smoked crack before.
We find that this did not constitute an attempt to explain his prior convictions. While defendant's testifying could have been constitutionally problematic had he actually sought to explain the prior convictions, in this instance the issue was averted.
Livings was not constitutionally deprived of his right to due process by the inclusion in the bill of information of facts concerning his prior convictions. The reading of the bill of information to the jury, the introduction into evidence of the records of the prior convictions, and the stipulation to the jury that the prior crimes had occurred did not deprive Livings of his constitutional rights because the trial judge gave limiting instructions as required in Green, 493 So.2d 588. His testifying had no affect on this constitutional evaluation because his prior convictions were not discussed.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
In his third assignment of error, Livings contends that the trial court erred in refusing to allow the defendant to present evidence to the jury regarding the reasonableness of the police conduct in the case.
He claims that the Lafayette Metro Narcotics' policy of using arrestees as informants was relevant because the policy contained exculpatory evidence. We have reviewed the portion of the transcript dealing with the inquiry into the policy of Metro and note that defense counsel was allowed to question Deputy Trahan on whether he followed this policy of arresting drug dealers and having them inform on other drug dealers. We fail to see, and appellant does not make clear, how the *736 court's ruling prevented the appellant from presenting important exculpatory evidence to the jury. Defendant's contentions are vague, diffuse, and confusing. Further, appellant fails to cite any law in support of this claim.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 4
By his fourth assignment of error, Livings contends that the trial court erred in allowing the state to introduce the opinion of its police officer, Todd Bergeron, while prohibiting him from asking for an opinion from the same officer. Specifically, he claims that the State had Bergeron testify concerning his knowledge of crack cocaine and crack pipes. Bergeron helped to provide a chain of custody for the crack pipe introduced into evidence by identifying it as the one he packaged and requested be analyzed.
Livings complains that he was not allowed to fully cross-examine Bergeron concerning his knowledge of whether there actually was crack in the pipe at the time of his arrest. Livings feels this information addresses the issue of guilty knowledge. The State objected to the questions, saying they were argumentative, called for a legal conclusion, and were not proper for a fact witness. The trial court sustained the State's objection.
We cannot say that the trial court erred as Livings did not object to the trial court's ruling, he did not preserve the issue for appeal. La.Code Crim.P. art. 841. Also, Livings cites no authority for his position. Thus, this assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 5
In his fifth assignment of error, Livings claims that the trial court erred in holding a hearing in the presence of, and with the participation of, the district attorney regarding defendant's right to waive his fifth amendment privilege.
Before Livings was allowed to testify, the judge and the prosecutor questioned him, outside the presence of the jury, to ensure that he understood that he was waiving his right against self-incrimination. Livings now claims the hearing "chilled" the exercise of his rights and interfered with his right to counsel. He additionally claims that the prosecutor's questioning confused him about the privilege. However, we note that after the prosecutor questioned defendant, he was allowed to confer with his attorney. Moreover, after the conference, the trial judge again asked the defendant if he still wanted to take the stand. The defendant replied in the affirmative, saying he was doing so of his own free will.
There is no indication of a "chilling effect," especially since defendant took the stand as he originally planned. Livings does not explain how the hearing interfered with his right to counsel, or even how it might have interfered. While the transcript shows the defendant may have been confused by the prosecutor's questions, any confusion should have been eliminated when he conferred with his attorney. Defense counsel did not object to the prosecutor's questioning, nor contemporaneously claim defendant was confused. The record does not substantiate the allegations of Livings and Livings cites no legal authority to support these assertions. More likely, the questioning of defendant ensured that he understood that he was waiving his right against self-incrimination, which was to his benefit.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 6
By this assignment of error, Livings contends that the trial court erred in allowing the district attorney to introduce the certificate of the crime lab, instead of requiring the appearance of the lab technician who issued the certificate, despite the fact that the defendant had timely subpoenaed the technician, who failed to appear.
Livings subpoenaed the lab technician on the day of trial, but he did not appear in response to the subpoena. Defense counsel then asked for a continuance. He argued that the prosecution should not be allowed to introduce a copy of the lab report verifying there was crack in the crack pipe found on the defendant, because the lab technician was not available for cross-examination on the subject, and therefore, defense counsel could not traverse him on how he conducted the *737 analysis and on whether there was ever contamination in the lab. The trial judge denied the motion for continuance.
Once again, Livings fails to cite any law in his complaint, and, once again, the statutory law is emphatically against him. The record shows that the prosecutor complied with La. R.S. 15:501 by giving notice more than ten days prior to trial that he intended to offer the lab report as prima facie proof of its contents. Under La.R.S. 15:501(B)(1), to prevent the certificate of analysis from being considered prima facie proof of its contents, Livings should have subpoenaed the lab technician at least five days before trial commenced. Instead, the subpoena was issued the day trial began, directing the technician to show up the next day. When the technician did not show, defense counsel requested a continuance. Moreover, all this occurred after defense counsel had called his witnesses; the technician was to be the last witness. Defense counsel did not use due diligence in his efforts to procure attendance of the witness, and no offer was made to show that the witness would be available at the time to which trial would be deferred. La.Code Crim.P. art. 709.
The trial judge properly denied the continuance and this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 7
By his seventh assignment of error, Livings contends that the trial court erred in allowing the prosecutor to argue about the effect of appellate courts and to present appellate decisions to the jury.
In closing argument, the prosecutor referred to State v. Fontenot, 578 So.2d 1032 (La.App. 3 Cir.) writ denied, 582 So.2d 1305 (1991), in which this court held that a defendant's claim that he did not knowingly possess cocaine is not supported by the fact that the amount of cocaine in the crack pipe is not readily visible. Defense counsel objected to the reference on the ground that the prosecutor is not allowed to argue law to the jury. The trial judge allowed the prosecutor to proceed with an explanation of the appellate case.
Confining the complaint to an analysis under La.Code Crim.P. art. 774 and the relevant case law, the prosecutor's reference to Fontenot, although perhaps reprehensible, was not a fatal violation of La.Code Crim.P. art. 774. Although the Louisiana Supreme Court has expressed its disapproval of the practice, it does not find it reversible error. State v. Scales, 93-2003 (La. 5/22/95), 655 So.2d 1326. A review of the prosecutor's comments in the instant case show that they were not an incorrect or misleading statement of the Fontenot decision. The prosecutor's argument concerned evidence admitted, the crack pipe, and the conclusion the defendant was attempting to draw. During the trial, defense counsel had argued that because Livings could not see any crack in the crack pipe, he could not have had "knowing possession." The prosecutor's reference was in direct rebuttal to that argument and was a proper comment regarding evidence, or lack of evidence, raised at trial.
The trial court has wide discretion in controlling the scope of closing argument. State v. Prestridge, 399 So.2d 564 (La.1981). Generally, a wide latitude is allowed counsel in closing argument, and only if there is undue restriction of argument resulting in substantial prejudice is reversal required. State v. Joseph, 341 So.2d 861 (La.1977); State v. Taylor, 430 So.2d 686 (La.App. 2 Cir.), writ denied, 438 So.2d 575 (La.1983). Thus, even if the reference were improper, for the district attorney's action to be grounds for mistrial, or for reversal on appeal, there must be a showing that the impropriety influenced the jury and contributed to the verdict. State v. Jarman, 445 So.2d 1184 (La.1984); La.Code Crim.P. art. 921. There is no indication that the jurors were improperly influenced by the reference or that the reference prejudicially contributed to the verdict. Further, in Scales, 655 So.2d 1326, the prosecutor improperly referred by name to a case dealing with victim impact evidence during his closing argument. The court reiterated its caution against the prosecutor's direct reference to an opinion by name. The court further stated that while it disapproved of referring to cases, it did not *738 find the prosecutor's action to be reversible error because the prosecutor's comments were not an incorrect or misleading statement of the named decision.
This assignment of error is without merit

CONCLUSION
The trial court did not err in denying defendant's motion to suppress. The bill of information, in making reference to previous crimes of the defendant, was properly drafted. Defendant's due process rights were not violated by the introduction into evidence of his prior convictions because the trial judge properly instructed the jury. The trial court properly ruled on the prosecution's and defense counsel's questioning of Officer Bergeron. The trial court did not err in holding a hearing to establish whether the defendant properly understood he was waiving his fifth amendment privilege. Defendant did not timely subpoena the lab technician, and the trial judge properly allowed into evidence the certificate of analysis. The prosecutor's reference to an appellate case was not improper and did not prejudice the jury in its decision. All of the assignments of error lack merit.
The defendant's conviction is affirmed, but remanded for the court to inform the defendant of his post conviction relief rights by sending appropriate written notice to the defendant within ten days of the rendition of this opinion, and then to file written proof in the record of the proceedings that the defendant received the notice.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, Judge, dissenting.
Deputy John Trahan did not have a sufficiently particularized suspicion based on articulable facts to detain or arrest Joseph Livings. See State v. Thibodeaux, 531 So.2d 284 (La.App. 3 Cir.1987). He only had a generalized hunch that Livings was involved in criminal conduct. He detained and arrested Livings because Livings "seemed like [h]e was concealing something from me." (emphasis supplied). Because it was a high crime area, according to Deputy Trahan, he "always [had] a doubt in [his] mind" with respect to his safety. Does a generalized description of a "high crime area" justify a warrantless search? Certainly not in my mind. If so, then warrantless searches could be conducted in every area that a law enforcement officer describes as a "high crime area," particularly when the record lacks any corroborating statistical or other evidence to demonstrate the existence of a so-called "high crime area."
Officer Trahan received a call that two suspects were standing in the street. One of the individuals was shirtless and reportedly possessed a large amount of drugs. Another individual, the defendant, "was standing along side of him, I guess running to cars," according to Deputy Trahan. (emphasis supplied).
Officer Trahan testified that he was in fear of his safety. As the majority points out, a weapons frisk is justified where a reasonably prudent man is reasonably concerned about his safety. See La.Code Crim.P. art. 215.1(B). However, before this section of Article 215.1 comes into play, the provisions of paragraph A must be shown. That is, "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." There is absolutely no evidence in this record that Livings was committing, had committed, or was about to commit an offense. Even the officer testified that Livings was not the person reportedly with a large amount of drugs and he assumed Livings was running to cars presumably parked in the area or being driven in that area. The officer initially testified that Livings was obstructing traffic, but later recanted and said that he was not doing so "at that time of night." He then lamely tried to justify his actions by saying that Livings was obstructing his path.
Officer Trahan had no articulable reason for frisking the defendant. For the foregoing reasons, the defendant's motion to suppress the evidence should have been granted *739 and all evidence seized from the defendant on that evening should have been excluded from his trial.
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Judge William N. Knight of the Thirty-first Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.